663 So.2d 1327 (1995)
Kirk A. WOODSON, Appellant,
v.
Wilma MARTIN and MacLean Realty, Inc., a Florida corporation, Appellees.
No. 94-00002.
District Court of Appeal of Florida, Second District.
November 17, 1995.
Jeffrey N. Kramer, Mansfield, Ohio, for Appellant.
Robert L. Rocke and Jodi L. Corrigan of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for Appellees.
EN BANC
DANAHY, Judge.
Is a buyer of residential property (the appellant) prevented by the "economic loss rule" from recovering damages for fraud in the inducement against the real estate agent and its individual agent (the appellees) representing the sellers? The trial court held that the economic loss rule applies here and entered final summary judgment in favor of the appellees. We agree and affirm; however, we certify this question to the supreme court as a question of great public importance.
The appellant bought an expensive home which he alleged was represented to him by the appellees as almost new. The appellant asserted that the appellees were guilty of a number of misrepresentations and that he acted on those misrepresentations in deciding to buy the house. When the appellant and his wife moved into the house, they discovered numerous serious defects.
The appellant's second amended complaint contained four counts. Count I alleged fraud *1328 in the inducement against the appellees, the sellers, and another person not a party to this appeal. Count II asserted breach of implied warranty of habitability against the appellees and the sellers. Count III alleged breach of contract against the sellers. Count IV sought rescission of the Purchase and Sale Agreement entered into by the sellers and the appellant.
The appellees and the sellers filed motions for summary judgment. The trial court granted the motions with respect to Count I, fraud in the inducement, as to the sellers and the appellees. The trial court granted the appellees' motion for summary judgment with respect to Count II but denied the motion of the sellers. The trial court denied the sellers' motion for summary judgment with respect to Count IV. Thus the appellant's claims against the sellers for breach of implied warranty of habitability, breach of contract, and rescission remain pending.[1]
The parties agree that the trial court's ruling on the appellant's claim against the appellees for fraud in the inducement was based on language in the Florida Supreme Court's opinion in Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla. 1993). In that case a concrete supplier (Toppino), a dissolved corporation, supplied concrete for numerous construction projects in Monroe County. Apparently, some of the concrete supplied by Toppino contained a high content of salt that caused the reinforcing steel inserted in the concrete to rust, which, in turn, caused the concrete to crack and break off. Owners of condominium units and single family homes built with, and allegedly damaged by, Toppino's concrete brought separate actions against Toppino and numerous defendants and included claims against them for breach of common law implied warranty, products liability, negligence, and violation of the building code. The trial court dismissed all counts against Toppino and the plaintiffs appealed. The Third District Court of Appeal affirmed the dismissals in favor of Toppino. Our supreme court approved the district court's decision.
The supreme court stated the issue to be whether a homeowner can recover for purely economic losses from a concrete supplier under a negligence theory. The court agreed with the district court that such a recovery cannot be had.
The supreme court adopted the definition of economic loss as being damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property. The court pointed out that, in other words, economic losses are "disappointed economic expectations" which are protected by contract law rather than tort law. The court said "this is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party." The court said that for a recovery in tort "there must be a showing of harm above and beyond disappointed expectations." Id. at 1246.
The supreme court in Casa Clara rejected the suggestion that there should be an exception to the economic loss rule for homeowners. The court explained that if a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort law. The court mentioned that protections for home buyers include statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects.
In Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628 (Fla. 1995), the supreme court answered three questions certified to it by the United States Court of Appeals for the Eleventh Circuit.
Airport Rent-A-Car owned several buses manufactured by Prevost but not purchased by Airport Rent-A-Car from Prevost or any distributor. Two of the buses caught fire and were destroyed while in transport. Airport Rent-A-Car brought tort claims against *1329 Prevost, the manufacturer and seller of the buses, alleging the buses when sold were defective and unreasonably dangerous.
The first certified question was whether, under Florida law, the economic loss rule applies to negligence claims for the manufacture of a defective product where the only damages claimed are to the product itself and where the plaintiff claims to have no alternative theory of recovery. The court answered this question in the affirmative. As to the other two questions, the court rejected the suggestion that a cause of action otherwise precluded by the economic loss rule may be maintained if the damage to the product is caused by a sudden calamitous event and the suggestion that a cause of action may exist outside the bar of the economic loss rule where the plaintiffs allege a duty to warn which arose from facts which came to the knowledge of the company after the manufacturing process.
The supreme court in Airport Rent-A-Car stated that its decision in Casa Clara was of particular importance in answering the first certified question. The court strongly reaffirmed its holding in Casa Clara, emphasizing that in Casa Clara the court recognized that the law of contracts protects one's economic losses, whereas the law of torts protects society's interest in being free from harm. The court cited language from a previous case that "without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses." Airport Rent-A-Car at 632 (quoting AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180, 181-82 (Fla. 1987) (emphasis supplied)).
The United States Court of Appeals for the Eleventh Circuit has issued two other opinions in which the Florida economic loss rule was pivotal. In the first of these, Hoseline, Inc. v. U.S.A. Diversified Products, Inc., 40 F.3d 1198 (11th Cir.1994), a supplier had entered into a contract with a manufacturer to ship wire harness loom to the manufacturer for use in the manufacture of automobile parts. Believing that it had been shortchanged by the supplier, the manufacturer asserted claims for fraud and civil theft against the supplier's owner, the supplier itself having declared bankruptcy. The court held that the economic loss rule barred the manufacturer's claims for common law fraud and theft based upon the breach of contract.
The second opinion was issued in a case in which a home builder sought damages from a manufacturer of chemicals that were applied to plywood which the builder used in constructing the roofs of a number of townhouses. The purpose of applying the chemicals was to meet requirements that the plywood be fire-retardant treated. The purchasing agents of the builder did not specify that the chemical manufacturer's product be applied to the plywood which the builder purchased; they only required that the plywood bear the required stamps to indicate that the plywood was fire-retardant treated. After the townhouses were sold, the chemicals caused the plywood to deteriorate, requiring the builder to replace the plywood at a cost exceeding $3,650,000. The builder sued the chemical manufacturer. The United States District Court concluded that the economic loss rule barred the builder's negligence claim as well as its fraud claim.
The appellate court rendered its decision in Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734 (11th Cir.1995). The court agreed with the district court that the economic loss rule barred the builder's negligence claim, but disagreed that the rule precluded the builder's claim for fraud in the inducement. The court ruled, however, that the builder failed to prove its claim.
We believe that the nature of the damages suffered determines whether the economic loss rule bars recovery based on tort theories. If the damages sought are economic losses only, the party seeking recovery for those damages must proceed on contract theories of liability. Economic losses are property damage which results in loss of the benefit bargained for. The only damages suffered by the appellant were damages to the house. Thus, this situation comes squarely within the economic loss rule as stated by the Florida Supreme Court in Casa Clara and in Airport Rent-A-Car.
*1330 For the foregoing reasons, we affirm. Question certified.
THREADGILL, C.J., and RYDER, CAMPBELL, SCHOONOVER, FRANK, FULMER and QUINCE, JJ., concur.
ALTENBERND, J., dissents with an opinion, in which PATTERSON and WHATLEY, JJ., concur.
LAZZARA, J., dissents with an opinion, in which PARKER, ALTENBERND and BLUE, JJ., concur.
ALTENBERND, Judge, dissenting.
I agree that the possible application of some economic loss rule to fraud in the inducement is a question requiring certification to the supreme court. Although the majority decision is consistent with an Eleventh Circuit decision and also with some language in Casa Clara, I disagree with the answer that the majority has provided for the certified question.
The economic loss rule is a tool designed to prevent modern negligence theories from consuming traditional contract law. It is useful to control the growth not only of negligence law in the narrow sense, but also strict liability and products liability.[2] These theories do not require intentional acts by a defendant. Having evolved from trespass on the case, these negligence theories have traditionally protected a plaintiff's interest in the safety and physical well-being of person and property. The element of duty in these theories has been used to support standards of care protecting these limited safety interests. As a result, property damage or personal injury has long been a required element of these negligence theories.
An action for deceit has existed at common law since 1201. William L. Prosser, Handbook of the Law of Torts, § 105 (4th ed. 1971). The modern common law of fraud traces its roots to Pasley v. Freeman, 3 Term Rep. 51, 100 Eng.Rep. 450 (1789). In general terms, the interest protected by fraud is society's need for true factual statements in important human relationships, primarily commercial or business relationships. More specifically, the interest protected by fraud is a plaintiff's right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff. Generally, the plaintiff's loss is a purely economic loss, resulting from the difference in economic value between the true condition and the represented condition of an item of property  real, personal or intangible.
I recognize that many judges and lawyers have reached the same conclusion that the majority reaches today. Nothing in Casa Clara causes me to conclude that the supreme court actually intended to abolish a seven hundred-year-old intentional tort in the context of limiting a negligence theory. Although the opinion quickly jumps from the correct term "negligence theory" to an overly broad reference to "tort," it contains no discussion of the interest protected by the intentional tort of fraud. The supreme court refused to make an exception to the economic loss rule for homeowners because they have adequate protection arising from the "duty of sellers to disclose defects." 620 So.2d at 1247. The Casa Clara opinion supports that statement with a citation to Johnson v. Davis, 480 So.2d 625 (Fla. 1985), a case in which the home buyers' cause of action was fraud in the inducement. See also Leisure Founders, Inc. v. CUC Int'l, 833 F. Supp. *1331 1562 (S.D.Fla. 1993) (fraud in the inducement occurring prior to and independent from securities contract is not barred by economic loss rule); GNB, Inc. v. United Danco Batteries, Inc., 627 So.2d 492, 499 n. 9 (Fla. 2d DCA 1993) (Altenbernd, J., dissenting) (questioning whether economic loss rule now bars claim for tortious interference with business relationship).
I would note that Florida seems to have at least three distinct, but often overlapping, economic loss rules in operation today. This case is not resolved by any of these rules. First, there is the products liability economic loss rule: If the defendant's product physically damages only itself, causing additional economic loss, no recovery is permitted in "tort." This is arguably the rule controlling Casa Clara and Prevost. It is not the rule that governs Dr. Woodson's claim. There is an argument that the products liability rule should bar a broad range of tort theories, including fraud. If so, I am inclined to believe that it should apply to a narrowly defined concept of product and only in claims against manufacturers and retailers where warranty theories can provide an adequate remedy.
Second, there is the contract economic loss rule: If the parties have entered into a contract, the obligations of the contract cannot be relied upon to establish a cause of action in tort for the recovery of purely economic damages. This rule is best exemplified by AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla. 1987). If the plaintiff sues in negligence under these circumstances, the standard of care alleged must be based upon some broader societal interest and not merely on the obligations between the parties established in their contract. There must be a separate, "independent tort." Id. at 181. Normally, fraud in the inducement occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract.
This rule might govern Dr. Woodson's claim against the sellers, but probably does not directly affect his claim against the sellers' real estate agent. There is admittedly a valid argument for expanding this rule to include parties such as the appellees in this case who are intimately connected to the plaintiff's contractual relationship with a third party. Plaintiffs occasionally employ a fraud theory merely because they negotiated an inadequate contractual right with a third party. I am inclined to believe that the courts can control these occasional abuses with methods more precise and controllable than a broad spectrum economic loss rule.
Finally, there is the negligence economic loss rule: Common law negligence will not be expanded to protect economic interests in the absence of personal injury or property damage unless the judiciary is convinced that a strong public policy requires an expansion of the common law to protect specific economic interests. This is the rule employed in Palau International Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA 1995). Although Sandarac Association, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992), review denied, 626 So.2d 207 (Fla. 1993), is factually comparable to Casa Clara, Sandarac relied upon the negligence rule and not the products liability rule. This rule does not apply to fraud or other intentional torts. As discussed in Sandarac, examples of judicial expansion of negligence under this rule include the professional liability cases involving lawyers, title abstractors, and accountants.
In answering the certified question, the supreme court should also consider negligent misrepresentation. I regard that cause of action as another expansion of negligence under the economic loss rule. In some limited circumstances, the judiciary has recognized a common law standard of care in negligence to protect a plaintiff's right to justifiably rely on the truth of certain representations even when the misrepresentation is the result of the defendant's negligent statement. If the majority's reasoning is correct, both fraud and negligent misrepresentation have been essentially abolished in Florida.
PATTERSON and WHATLEY, JJ., concur.
*1332 LAZZARA, Judge, dissenting.
I am in complete agreement with the need to submit the issue framed in the majority's opinion to the Florida Supreme Court, especially in light of the recurring invocation by defendants of the economic loss rule to stave off fraud claims initiated by plaintiffs within the context of contractual disputes and of the continuing uncertainty as to the proper application of the rule. See, e.g., Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1352 (Fla. 2d DCA 1992) (observing the ease with which the rule is stated but the difficulty with which it is applied by judges and lawyers), review denied, 626 So.2d 207 (Fla. 1993). I am of the opinion, however, that the submission of this important question should be done in the context of a reversal of the trial court's determination that the economic loss rule announced in Casa Clara Condominium Association v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla. 1993), precluded the appellant from recovering damages from the appellees for the tort of fraud in the inducement. My reasons for dissenting, while consistent with Judge Altenbernd's, are based on a slightly different perspective.
In Johnson v. Davis, 480 So.2d 625, 629 (Fla. 1985), the Florida Supreme Court promulgated a broad-based rule, rooted in notions of modern justice and fair dealing, that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." It applied this duty of disclosure "to all forms of real property, new and used." Id. The court's holding, which effectively placed a "harness" on the doctrine of caveat emptor within the context of the sale of a home, was derived in part from the seminal case of Lingsch v. Savage, 213 Cal. App.2d 729, 29 Cal. Rptr. 201, 8 A.L.R.3d 537 (Cal. 1st DCA 1963), which was quoted with approval. 480 So.2d at 628-629.
Florida courts, including our own, have applied the duty of disclosure established in Johnson to a real estate agent or broker representing a seller. Torbron v. Campen, 579 So.2d 165, 169 (Fla. 5th DCA), review denied, 589 So.2d 289 (Fla. 1991); Revitz v. Terrell, 572 So.2d 996, 998 n. 5 (Fla. 3d DCA 1990); Young v. Johnson, 538 So.2d 1387, 1389 (Fla.2d DCA 1989); Rayner v. Wise Realty Co., 504 So.2d 1361 (Fla. 1st DCA 1987). Indeed, in the lower court opinion which the supreme court approved in Johnson, the Third District noted that although its holding was limited by the facts before it, "we realize that this duty is equally applicable to real estate brokers[.]" Johnson v. Davis, 449 So.2d 344, 350 n. 1 (Fla. 3d DCA 1984). Significantly, the Lingsch decision, which the supreme court relied on in Johnson, also extended this duty to a real estate agent or broker. 213 Cal. App.2d at 736, 29 Cal. Rptr. at 205.
It is clear to me, therefore, that the appellees, as real estate agents representing the sellers, had a duty under Johnson to disclose to the appellant any facts known to them which materially affected the value of this home, if such facts were not readily observable by or known to the appellant. If the facts advanced by the appellant are true, then the appellees have clearly violated the duty imposed by Johnson and should be held accountable for their fraudulent misrepresentations and nondisclosures which induced the appellant to purchase the home.
The question becomes, therefore, whether the economic loss rule promulgated in Casa Clara insulates the appellees from liability for their alleged tortious conduct of fraud. In my opinion, to answer this question in the affirmative, as the majority does, requires a determination that Casa Clara overruled Johnson. The validity of such a determination, however, must stand the test of the principles announced long ago by the Florida Supreme Court that "[f]or one case to have the effect of overruling another, the same questions must be involved; they must be affected by a like set of facts and a conclusion must be reached in hopeless conflict with that in the former case." State ex rel. Garland v. City of West Palm Beach, 141 Fla. 244, 247-248, 193 So. 297, 298 (1940).
In accord with this rule, I find nothing in the language or holding of Casa Clara which compels a conclusion that it is in "hopeless conflict" with Johnson and thus overruled it. *1333 First, it is clear from the facts of Casa Clara that none of the plaintiffs' causes of action or factual allegations involved fraud in the inducement, as was the case in Johnson. Second, the issue framed by the court in Casa Clara was "whether a homeowner can recover for purely economic losses from a concrete supplier under a negligence theory." 620 So.2d at 1245 (emphasis added). Finally, and most important, the court's refusal in Casa Clara to exempt homeowners from the economic loss rule, when examined in its proper context, did not emasculate Johnson but instead reaffirmed its basic holding as one of the protections still available to purchasers of homes. I base this conclusion, which I am confident some members of the bench and bar will find surprising, on the following analysis.
The court in Casa Clara initially made a seemingly all-encompassing statement that "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." 620 So.2d at 1247 (emphasis added). Significantly, it immediately qualified this broad pronouncement by observing that "[t]here are protections for homebuyers, however, such as ... the duty of sellers to disclose defects[,]" specifically citing Johnson for this proposition. Id. The court then observed that such protections, coupled with a purchaser's ability to bargain over price, were sufficient to safeguard the interests of a homebuyer without incurring "the mischief that could be caused by allowing tort recovery for purely economic losses." Id. (emphasis added). It then reaffirmed its prior holding in Florida Power & Light Company v. Westinghouse Electric Corporation, 510 So.2d 899 (Fla. 1987), a case also involving a claim based on a negligence theory, that "contract principles [were] more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage." Id. (emphasis added).
Based on this language, it seems clear to me that Casa Clara did nothing more than decline to exempt homeowners from the reach of the economic loss rule which precludes the recovery of purely economic damages under a negligence claim when there is no accompanying physical damage or personal injury. See Sandarac, 609 So.2d at 1352 ("The majority rule in this country holds that economic damages are not recoverable in negligence unaccompanied by physical property damage or bodily injury.") (emphasis added). Furthermore, as I have underscored, although the supreme court used the generic terms "tort law," "tort recovery," and "tort principles" in its opinion, it cannot be emphasized enough that the use of these terms was in the context of a negligence claim and not within the context of an intentional tort such as the appellant alleged in this case. See also East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (using the term "tort" in the context of applying the economic loss rule to strict liability and negligence claims); AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987) (using the term "tort" in the context of applying the economic loss rule to a negligence claim). Hopefully, in answering the majority's certified question, the supreme court will address the nature of the claims that are encompassed within the term "tort" as used in its pronouncements on the economic loss rule so as to dispel the confusion engendered by its unqualified use of this term. See GNB, Inc. v. United Danco Batteries, Inc., 627 So.2d 492, 499 n. 9 (Fla. 2d DCA 1993) (Altenbernd, J., dissenting); Sandarac, 609 So.2d at 1352 n. 3.
More important, it also seems clear to me that one of the crucial underpinnings which influenced the court in Casa Clara not to carve out an exception to the economic loss rule for homeowners was its reaffirmation of the continuing viability of the protection afforded to defrauded homebuyers by the tort remedy fashioned in Johnson. I conclude, therefore, that Johnson's holding imposing tort liability for fraud in the inducement in the context of the sale of a home lives on after Casa Clara as a significant counterbalance to the supreme court's continuing commitment to the application of the economic loss rule to negligence claims seeking purely economic damages in the absence of property damage or physical injury.
*1334 Accordingly, I would reverse the trial court's final summary judgment in favor of the appellees.
PARKER, ALTENBERND and BLUE, JJ., concur.
NOTES
[1] We have jurisdiction of this appeal. See City of St. Petersburg v. Circuit Court of the Sixth Judicial Circuit, 422 So.2d 18 (Fla. 2d DCA 1982).
[2] The need for this rule arose, in large part, because parties were beginning to apply professional malpractice concepts in commercial negligence and products liability cases. At the turn of the century, claims against doctors, lawyers, and other professionals gradually shifted from contract claims to a new "malpractice" theory in which the "privity" of the professional contract implied a contractual obligation of reasonable care. Traditional contractual remedies, however, were not adequate for a breach of this implied contractual clause. As a result, the "privity" of the professional contract was eventually used to justify a relationship of duty in a new negligence theory and the implied contractual obligation of reasonable care became the standard of care for this new tort. This amalgam of contract law and tort law worked so well in the professional cases that parties eventually were tempted to expand the mixed cause of action to other commercial and products liability claims. The attempt has been rejected in many cases, beginning perhaps with East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).