673 So.2d 487 (1996)
ACADIA PARTNERS, L.P., et al., Appellants/Cross-Appellees,
v.
Thomas N. TOMPKINS and Marcia K. Tompkins, et al., Appellees/Cross-Appellants.
Nos. 94-2622, 94-2625 to 94-2627, 94-2791 and 95-743.
District Court of Appeal of Florida, Fifth District.
March 22, 1996.
Rehearing Denied May 3, 1996.
*488 Daniel Waldman and Patricia A. Dean of Arnold & Porter, Washington, D.C., and Donald E. Christopher of Litchford & Christopher, Orlando; and Alan C. Sundberg, William D. Palmer, Sylvia H. Walbolt and Gary L. Sasso of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for Appellants/Cross-Appellees.
John M. Robertson and J. Stephen McDonald of Robertson, Williams & McDonald, P.A., Orlando, for Appellees/Cross-Appellants.
Victor Chapman of Barrett & Chapman, P.A., Orlando, for Appellee N. Dwayne Gray.
Ronald L. Reid, Peter Q. Bassett, Rebecca M. Lamberth, and H. Douglas Hinson of Alston & Bird, Atlanta, Georgia and Leon Handley and Ronald L. Harrop of Gurney & Handley, P.A., Orlando, for Appellee Foley & Lardner.
HARRIS, Judge.
In 1991, Acadia Partners, L.P. (Acadia), filed two actions in the Osceola County Circuit Court. The first (the 319 action) was against Tompkins Investment Group Incorporated (T.I.G.I.) for the alleged breach of a credit agreement. The second action (the 320 action) was against the directors of T.I.G.I. individually, its attorneys and accountants, and others, and sought damages based generally on fraud, fraudulent transfer, statutory claims, tortious interference with contract, negligence, and negligent misrepresentation, all based on the same underlying transaction.
Prior to trial, Acadia moved to consolidate the actions for trial. The defendants objected, and the motion to consolidate was denied. The 319 action proceeded to trial on Acadia's complaint and the answer, including affirmative defense, and T.I.G.I.'s counterclaim. The result was mixed.
The jury determined that T.I.G.I. prevailed on Acadia's breach of agreement claims and on its own counterclaim in the amount of $18,785,500. However, the jury awarded Acadia $48,785,500 on its claim for unjust enrichment. The net verdict for Acadia, therefore, was $30,000,000 which it alleges remains unsatisfied. Because it contends that its judgment has not been satisfied (the defendants dispute this contention), Acadia attempted to proceed with its 320 action.
The defendants moved for summary judgment in the 320 action on the basis of res judicata, collateral estoppel, and election of remedies, claiming that the facts necessary to establish Acadia's claims in the 320 action had been offered in the 319 action (Acadia had moved to amend the pleadings in the 319 action to conform with the evidence), and that the jury had rejected Acadia's claims by finding that T.I.G.I. had not breached the credit agreement. This motion was referred to a special master who determined:
The 319 case was a contract action which required relatively simple proof, however, Acadia presented evidence of alleged numerous tortious acts of defendants Tompkins and others. At the conclusion of all the evidence, Acadia moved the court to conform its pleadings to the evidence.
It is apparent that in this action, Acadia seeks relief for the alleged tortious conduct of defendants based on the same underlying facts and circumstances which were presented to the jury in the 319 case.
Based on this finding, the special master recommended that summary judgment be entered in favor of defendants. Acadia timely filed its objection to the master's report, challenging not only the legal basis of the recommendation but also the "objectivity, impartiality and evenhandedness" of the master. The court never specifically ruled on these objections but nevertheless "considered the recommendation" and granted summary judgment as to all defendants.
It appears to be appellees' position, indeed critical to their position, that the 319 jury determined that T.I.G.I. did not breach the credit agreement. They rely on the verdict form which states:
1. On Acadia's claim that T.I.G.I. breached or defaulted upon the Amended Agreement, we find:
*489
 For Acadia
 For T.I.G.I. T.I.G.I. 
There were similar verdicts for counts involving the interim agreement and the original agreement each finding "for T.I.G.I."
Appellees herein construe such verdicts as constituting a finding that T.I.G.I. did not breach the credit agreementinterim, original or amended. The fallacy of this interpretation is that it ignores the fact that the trial court, in its instructions to the jury, clearly defined what the verdict language meant.
If the greater weight of the evidence supports Acadia's claim on [each issue relating to breach of agreement] then your verdict should be for Acadia, unless T.I.G.I. establishes an affirmative defense by the greater weight of the evidence. (Emphasis added).
* * * * * *
If the greater weight of the evidence does not support any of the defenses of T.I.G.I. and the greater weight of the evidence does support the claim of Acadia for breach of contract, then your verdict should be for Acadia in the total amount of its damages. If, however, the greater weight of the evidence does support any or all of the defenses of T.I.G.I, then your verdict should be for T.I.G.I. and against Acadia on Acadia's breach of contract claim[s]. (Emphasis added).
From the instructions given it, it is thus apparent that the jury's verdict on the contract claims could mean either that Acadia failed to prove T.I.G.I.'s default or that Acadia proved T.I.G.I.'s default but T.I.G.I. also proved one of its defenses.
While it is impossible to determine which finding the jury made from the face of the verdict alone, it is almost certain that the jury found that T.I.G.I. breached the agreement but also established at least one of its affirmative defenses. This is because the court also instructed the jury that:
T.I.G.I. agrees that it is required to pay interest quarterly on its loan from Acadia, subject to its affirmative defenses. T.I.G.I. also agrees that it has failed to make the quarterly interest payment on its $35 million loan from Acadia on December 31, 1989, and thereafter. (Emphasis added).
* * * * * *
T.I.G.I. agrees that it is required to repay the principal amount of its $35 million loan from Acadia, subject to its affirmative defenses. T.I.G.I. also agrees that it failed to repay any of the principal amount of that loan. (Emphasis added).
Indeed, unless an affirmative defense excused performance, after these stipulations by T.I.G.I., a finding of no breach of agreement by T.I.G.I., would be against the manifest weight of the evidence. Under the instructions given it, if the jury found for T.I.G.I. on any of the affirmative defenses, it could not find for Acadia on any of its breach of agreement counts, even based on T.I.G.I.'s admissions.
Had the jury, in fact, returned a verdict in favor of Acadia on its breach of agreement counts in the 319 action (even with a set-off because of T.I.G.I.'s counterclaim), the current action against these appellees would not be barred by res judicata or collateral estoppel. Since it is not conclusive from the verdict that the jury found that T.I.G.I. did not breach its agreement with Acadia, neither res judicata nor collateral estoppel are applicable to this case.[1]
*490 We also reject the claim that the 320 action is barred by the election of remedies principle. In the 319 action, the claim was for breach of a credit agreement; in 320, it was (among other claims) for fraud in the inducement to enter into the agreement. We agree with Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla.1973), that
"... [O]ne who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction. `Thus, an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit; * * *.' 18 Am.Jur. 139, El. of Rem. § 14 (1st ed. 1938). `A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other.' 50 C.J.S. Judgments § 676, p. 121 (1st ed. 1947). The courts of many states have recognized the rule that a suit on a contract and a suit for fraud in inducing the contract are two different causes of action with separate and consistent remedies."
Id. at 723. (Citation omitted).
We, therefore, reverse the summary judgment entered herein on the basis of res judicata, collateral estoppel or election of remedies.

THE DISCOVERY ISSUE
Acadia's request for certain documents in possession of Foley and Lardner, attorneys for T.I.G.I., including notes taken by one of the attorneys of a meeting with a director of T.I.G.I. relating to a substantial bonus being granted the director, was referred to a special master for recommendation. Finding that the requested material constituted "work product," the master recommended that the request be denied.
Although a timely objection to the master's report was filed, the court approved the master's recommendation and denied production before the objection was received, thus denying Acadia a hearing on its objection. This was error.
On remand, the court will grant a hearing on Acadia's objections to the master's report and reconsider its ruling on the discovery issues. Although we have requested and received supplemental briefing on the issue of waiver of the work product protection, since this issue was not considered by the trial court below, we believe it more appropriate to defer the decision initially to it.

THE COUNTERCLAIM
We concur with the trial court's dismissal of the Tompkins' counterclaim. We agree that the counterclaim asserts derivative claims that could only be asserted by T.I.G.I.
REVERSED and REMANDED for further action consistent with this opinion.
GOSHORN and GRIFFIN, JJ., concur.
NOTES
[1] As a separate basis for rejecting the claim that this action is barred by res judicata or estoppel by judgment, we agree with the court in Billman v. State Deposit Ins. Fund Corp., 86 Md.App. 1, 585 A.2d 238, cert. denied, 323 Md. 1, 590 A.2d 158 (Md.), cert. denied, 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991), in which the court stated:

[A]ppellants are estopped from arguing res judicata because it directly contradicts their position in their Opposition to Appellees' Motion to Consolidate. The Court of Appeals, in Kramer v. Globe Brewing Co., 175 Md. 461, 469, 2 A.2d 634, 637 (Md.1938), stated the clear rule of law that:
If parties in court were permitted to assume inconsistent positions in the trial of their cases, the usefulness of courts of justice would in most cases be paralyzed, the coercive process of law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.
Having convinced the court not to consolidate this case with [the first action], appellants cannot now seek to have it dismissed by asserting that the claims could have been raised and litigated previously.
Id. at 247-48 (citation omitted).
In their written objections, both the Tompkins and T.I.G.I. objected to the consolidation because there was not an identity of issues or parties. Foley and Lardner also objected on the basis that "the issues really are not the same."