676 So.2d 513 (1996)
P. Bryce WILLIAMS and Michael J. Dwyer, Appellants,
v.
PEAK RESORTS INTERNATIONAL INC., et al., Appellees.
No. 95-1325.
District Court of Appeal of Florida, Fifth District.
July 12, 1996.
*514 Patrick C. Crowell of Patrick C. Crowell, P.A., Orlando, for Appellants.
Walter S. McLin, III and Phillip S. Smith of McLin, Burnsed, Morrison, Johnson & Robuck, P.A., Leesburg, for Appellees.
THOMPSON, Judge.
P. Bryce Williams and Michael J. Dwyer, appellants, appeal the partial summary judgment entered against them as to Count I (Florida's Communication Fraud Act), Count II (Common Law Fraud), and Count IV (Quantum Meruit)[1] of their counterclaims against Peak Resorts International, Inc., Peak Financial Corporation of Florida, James W. Peak, Samuel H. Simkin, and Max P. Cawal. We reverse the partial summary judgment, and remand for further proceedings.
Peak Resorts International, Inc. ("Peak Resorts"), a Florida corporation having a principal place of business in Florida, was formed for the purpose of developing resort properties. Peak Financial Corporation of Florida ("Peak Financial") is a shareholder of Peak Resorts. James W. Peak ("Peak") is the President and one of three shareholders of Peak Financial, and is the President of Peak Resorts. Samuel H. Simkin ("Simkin") is one of three shareholders of Peak Financial, and an officer of Peak Resorts. Max P. Cawal ("Cawal") is also one of three shareholders of Peak Financial, and an officer of Peak Resorts.
In 1992, Peak Resorts began contracting for and obtaining options to purchase certain real properties in Osceola and Lake Counties for the purpose of constructing a time-share resort. In April or May 1992, Peak Resorts began negotiations with appellant P. Bryce Williams ("Williams") for the purpose of obtaining his services as Vice President and Chief Financial Officer of Peak Resorts. Over the course of the next few months, Simkin, Cawal, and Peak allegedly made several false representations to Williams regarding the financial status of Peak Enterprises (including Peak, Peak Financial, and Peak Resorts). Those alleged false representations included statements that Peak Enterprises was financially strong and was capable of providing compensation to Williams for his services. Williams allegedly relied on these representations and in August 1992, accepted Peak Resorts' offer of employment. Peak Resorts and Williams executed an employment agreement which provided that Williams would serve as the Executive Vice-President (EVP) and Chief Financial Officer (CFO) of Peak Resorts. The terms of the contract provided that Williams would be employed as an independent contractor from 1 September 1992 through 21 December *515 1992, and on 1 January 1993, he would serve as the EVP and CFO of Peak Resorts at an annual salary of $190,000. A second employment agreement was executed between Williams and Peak Resorts with an effective date of 1 April 1993. Pursuant to the second agreement, Williams was to receive an annual base salary of $140,000.
In June 1992, Peak Resorts began negotiations with Michael J. Dwyer ("Dwyer"), in an effort to obtain his services as the Vice President of Sales and Marketing and Project Director for the development of the property in Osceola and Lake Counties. Dwyer also relied on the alleged representations by Simkin, Cawal, and Peak, and in June 1992, began providing services pursuant to certain letter agreements indicating that Dwyer was to receive an annual base salary of $200,000, in addition to sales bonuses. In March 1993, Peak Resorts failed to pay amounts that were owed to Williams and Dwyer pursuant to their employment contracts.
This cause was commenced when Peak Resorts filed a complaint against Williams and Dwyer alleging extortion, conversion and conspiracy causes of action. Williams and Dwyer timely filed their answers, affirmative defenses and counterclaims. This appeal concerns the counterclaims brought by Williams and Dwyer against Peak Resort, Peak Financial, Peak, Simkin, and Cawal, which are as follows: (1) Count Iviolation of Florida's Communications Fraud Act, section 817.034, Florida Statutes (1991); (2) Count IIcommon law fraud; (3) Count IIIbreach of agreement; (4) Count IV quantum meruit; and (5) Count Vbreach of de facto employment agreement as to Williams only. The allegations as to all counts arose from the formation and performance of the employment contracts between Peak Resorts, Dwyer and Williams. The fraud claims are based on alleged misrepresentations by Peak Resorts, Peak Financial, Peak, Simkin and Cawal regarding Peak Resorts' ability to meet its obligations under the employment contracts. The record also contains affidavits of Dwyer and Williams detailing the damages they suffered as to the fraud claims, which damages are separate from the damages incurred as a result of Peak Resorts' breach of the employment contracts. According to their affidavits, Dwyer and Williams suffered the following damages in addition to the salaries agreed to: moving expenses; damage to credit; medical expenses; lost employment and opportunity for employment; and the sale of their homes.
Peak Resorts filed a motion for Partial Summary Final Judgment as to Counts I, II, and IV of the appellant's counterclaims. After a hearing on the motion, the trial court entered an order granting partial summary judgment for Peak Resorts as to Counts I, II, and IV of the appellants' counterclaims. In so doing, the trial court specifically found that the allegations in Count I were not separate from the allegations in the breach of contract claim; and that there being no genuine issue as to any material fact as to the interdependence of the facts supporting Count I and their claim for breach of contract, Dwyer and Williams were limited to obtaining and proving the right to recovery under their claim for breach of contract. As to Count II, the trial court found that Williams and Dwyer could not recover for purely economic losses absent evidence of physical injury or property damage; that their tort cause of action was identical to and inextricable from the evidence and facts arising from an alleged employment contract; and that there being no genuine issue as to any material fact regarding liability of Peak Resorts, Peak Financial, Peak, Simkin, and Cawal for common law fraud, Dwyer and Williams were limited to obtaining and proving the right to recovery under their claim for breach of contract.
Peak Resorts admitted breaching the employment contracts with Dwyer and Williams during a jury trial on Peak Resorts' Complaint against Williams and Dwyer, and on Counts III & V of their counterclaims. Accordingly, the trial court entered a judgment in favor of Dwyer and Williams and against Peak Resorts for breach of contract damages.
On appeal, Williams and Dwyer contend that the trial court erroneously granted summary judgment as to their fraud counterclaims against Peak Resorts, based upon its finding that the facts and evidence supporting *516 their fraud claims arose out of and were not separate from the allegations supporting their breach of contract claims. We agree. In their counterclaims against Peak Resorts, Williams and Dwyer specifically alleged that during the negotiations regarding employment opportunities within Peak Resorts, Simkin, Cawal and Peak made false representations in an effort to induce them to enter into employment contracts. The alleged false representations included remarks that the Peak Enterprises (Peak Resorts, Peak Financial, and Peak) had a strong financial status and was able to pay the negotiated salaries to Williams and Dwyer. In addition, Williams and Dwyer alleged that Peak fraudulently represented that he had a net worth of $21 million in an effort to induce their employment and assure them that they would be compensated for their services. Further, as to Count I only, Williams and Dwyer alleged that Peak Resorts violated Florida's Communications Fraud Act by making false representations through "the transmission or transfer of signs, signals, writing, images, sounds, data, or intelligences of any nature in whole or in part by the mail, or by wire, radio, electromagnetic, photo-electronic, or photo-optical systems." These allegations, which have not been disputed by Peak Resorts, when viewed along with the record evidence indicate that there are genuine issues of material fact. Therefore, the trial court erroneously granted summary judgment as to Counts I and II of the counterclaims.
This court recently decided a similar issue in Acadia Partners v. Tompkins, 673 So.2d 487, (Fla. 5th DCA 1996). There, Acadia filed two actions against Tompkins Investment Group Incorporated: (1) a breach of credit agreement claim (the 319 action); and (2) a fraud in the inducement to enter the agreement claim, among other claims (the 320 action). The trial court entered summary judgment as to Acadia's breach of contract action based on the recommendation of a special master that the facts necessary to establish the claims in the fraud action were identical to the underlying facts and circumstances which were presented to the jury in the breach of contract case. On appeal, this court reversed the summary judgment, specifically rejecting the argument that the fraud action was barred by the election of remedies principle. In so doing, this court agreed with Ashland Oil, Inc. v. Pickard, 269 So.2d 714, 723 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla.1973), that
`... (O)ne who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction. `Thus, an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit;* * *.' 18 Am.Jur. 139, El. Of Rem. s.14 (1st ed.1938). `A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other.' 50 C.J.S. Judgments s.676, p. 121 (1st ed.1947). The courts of many states have recognized the rule that a suit on a contract and a suit for fraud in inducing the contract are two different causes of action with separate and consistent remedies.'
Id. at 723 (quoting Bankers Trust Co. v. Pacific Employers Ins. Co., 282 F.2d 106, 110 (9th Cir.1960), cert. denied, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961)); see also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 661 So.2d 1221 (Fla. 3d DCA 1995), rev. granted, 670 So.2d 938 (Fla.1996) (affirming trial court's ruling that plaintiff's action for fraud in the inducement was an independent tort that was not barred by the economic loss rule); Burton v. Linotype Co., 556 So.2d 1126, 1128 (Fla. 3d DCA 1989), rev. denied, 564 So.2d 1086 (Fla.1990) ("Fraud in the inducement and deceit are independent torts for which compensatory and punitive damages may be recovered."). Put another way, the actions of fraudulent inducement into a contract and breach of that contract are not *517 mutually exclusive and, therefore, may be brought in the same suit. Sprayberry v. Sheffield Auto and Truck Service, Inc., 422 So.2d 1073, 1075 (Fla. 1st DCA 1982), rev. dismissed, 427 So.2d 738 (Fla.1983). In the instant case, the trial court erred in finding that the facts and evidence supporting the fraud claims raised by Dwyer and Williams arose out of and were not separate from the allegations supporting their breach of contract claims, and in concluding that Williams and Dwyer were limited to the recovery available under their contractual causes of action.
It is well settled that a party may not recover damages for both breach of contract and fraud unless the party first establishes that the damages arising from the fraud are separate or distinguishable from the damages arising from the breach of contract. See Florida Temps, Inc. v. Shannon Properties, Inc., 645 So.2d 102 (Fla. 2d DCA 1994) (holding that "[plaintiff was] not entitled to damages for fraud that duplicate damages awarded for breach of the contract"); Huie v. Dent & Cook, P.A., 635 So.2d 111 (Fla. 2d DCA 1994) ("[A] fraud claim may not be pursued if its damages merely duplicate the damages recoverable for breach of a related contract."); R.D.M.H., Inc. v. Dempsey, 618 So.2d 794 (Fla. 5th DCA 1993) (affirming award of compensatory damages for breach of contract claim, and reversing compensatory damages award for fraud claim because record evidence did not support an independent award of compensatory damages for fraud); Rolls v. Bliss & Nyitray, Inc., 408 So.2d 229 (Fla. 3d DCA 1981), dismissed, 415 So.2d 1359 (Fla.1982) (reversing award of compensatory and punitive damages based on fraud, since plaintiffs failed to prove that they sustained compensatory damages based on fraud which were separate or distinguishable from their compensatory damages based on the contract).
Under Florida's economic loss rule, absent a tort independent of breach of contract, recovery for economic loss must be pursued under contract law. See Casa Clara Condominium Ass'n v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1246-47 (Fla. 1993); Monco Enterprises v. Ziebart Corporation, 673 So.2d 491, (Fla. 1st DCA 1996). Florida courts have held that fraud in the inducement is an independent tort, and that recovery under this tort is not barred by the economic loss rule, and this is true irrespective of whether only economic losses are sought. See Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. 4th DCA 1996); TGI Development, Inc. v. CV Reit, Inc., 665 So.2d 366 (Fla. 4th DCA 1996); HTP, Ltd., 661 So.2d at 1222.
To the contrary, in Woodson v. Martin, 663 So.2d 1327, 1329 (Fla. 2d DCA 1995), the second district held that under the economic loss rule, the nature of the damages suffered determines whether recovery is barred for tort actions, explaining that if the damages sought are economic losses only, the party seeking recovery for those damages must proceed on contract theories of liability. In his dissent, Judge Altenbernd explained that in Florida there are three distinct, but often overlapping, economic loss rules: (1) the products liability economic loss rule; (2) the contract economic loss rule; and (3) the negligence economic loss rule. Id. at 1331. Under the contract economic loss rule, if the parties have entered into a contract, the obligations of the contract may not support a cause of action in tort for the recovery of purely economic damages. Id. Judge Altenbernd further noted that in fraud in the inducement claims, often the obligations under the contract are unrelated to the events that actually induced one to enter into the contract. The fraud usually occurs prior to the contract and whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to breach of the contract. Id.
In the instant case, Williams and Dwyer demonstrated that the economic losses they are seeking under the independent tort of fraud in the inducement are different from their breach of contract damages. Williams and Dwyer have filed affidavits indicating that they are seeking damages that would not be recoverable, and are separate and distinct from those damages that would be recoverable for Peak Resorts' breach of their employment contracts. Under their breach of contract claims, Williams and *518 Dwyer sought contract damages in the form of compensation due. Under the fraud claims, Williams and Dwyer are seeking compensation for moving expenses, medical expenses, the loss of credit, loss of employment, and the sale of their homes, which damages are separate and distinct from the breach of contract damages. Arguably, the appellants could have amended their complaint to recover these damages in their breach of contract action instead of in an action for fraud in the inducement. The fact that the appellants sought to recover damages under one theory as opposed to another is a decision for the appellants and their attorney, not the appellate court. In this regard, the record contains sufficient evidence to support a cause of action for fraud. Therefore, the trial court erroneously entered the summary judgment as to Counts I and II of the counterclaims raised by Williams and Dwyer. Moore v. Morris, 475 So.2d 666 (Fla.1985); Destiny Constr. Co. v. Martin K. Eby Constr., 662 So.2d 388 (Fla. 5th DCA 1995).
Accordingly, we reverse the partial summary judgment, and remand this case to the trial court for further proceedings.
REVERSE and REMAND.
ANTOON, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, Judge, dissenting.
The issue before us is whether the economic loss rule bars an action for fraud (common law or statutory) in a contract setting. In resolving this issue, we should remember that while one may question, if one enjoys idle pursuits, the rationale or holding of a particular supreme court decision, one may not question, at least rationally, whether the supreme court is supreme. Therefore, our initial task is not to determine whether the economic loss rule should apply to intentional torts but rather whether the supreme court, by its decisions, has made that determination.
Florida's economic loss rule is primarily defined by a trio of Florida Supreme Court cases beginning in 1987. In Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So.2d 899 (Fla.1987), a case involving a failed product, the court, in response to a certified question from the federal court, affirmed that Florida does indeed recognize the economic loss rule. In Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1246 (Fla. 1993), the court again applied the economic loss rule in another products liability case and stated:
Economic loss has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profitswithout any claim of personal injury or damage to other property."
* * * * * *
In other words, economic losses are "disappointed economic expectations," which are protected by contract law, rather than tort law.
* * * * * *
For recovery in tort "there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefits of his bargain is not an interest that tort law traditionally protects."
In Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628, 630 (Fla.1995), the court, in yet another products liability case, further explained its Casa Clara opinion:
Finding no reason to burden society as a whole with the losses of one who has failed to bargain for adequate contractual remedies, we concluded that "contract principles [are] more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage."
It appears, therefore, that the supreme court, at least if we confine ourselves to the express language of its decisions, has determined that if the loss is based on disappointed expectations unrelated to personal injury or "other" property injury, the plaintiff is precluded from bringing a tort action. But what did the supreme court have in mind when it used the term "tort"? *519 As pointed out in Judge Lazzara's dissent in Woodson v. Martin, 663 So.2d 1327 (Fla. 2d DCA 1995), even though the supreme court seems to have used the terms "tort" and "negligence" interchangeably, it has done so only in the context of negligence actions. One may question, therefore, whether the supreme court actually considered whether the economic loss rule should apply to any tort other than negligence. Perhaps it did not. But to so find requires an assumption that the supreme court was unmindful of its chosen language and unaware of the broader implications of its wording when it said: "`We again hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage.' (Citation omitted.) If we held otherwise, `contract law would drown in a sea of tort.'" Casa Clara, 620 So.2d at 1247. Further, since the courts that do apply the economic loss rule also apply it in strict liability cases, it appears that negligence is not the only tort affected by the rule.
But even if the economic loss rule is to be applied to all non-intentional torts, must it also be applied to torts involving intentional acts? Maybe not. See Judge Altenbernd's discussion of the policy reasons for permitting fraud actions in economic disputes in his dissent in Woodson.[1] But it is unlikely that the supreme court was unaware of this policy argument when it stated that "[t]he character of the loss determines the appropriate remedies." Casa Clara, 620 So.2d at 1247. Further, as pointed out in Huron Tool and Engineering Company v. Precision Consulting Services, Inc., 209 Mich.App. 365, 532 N.W.2d 541, 544 (1995):
With regard to the specific intentional tort of fraud, courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine.
As the case before us indicates, almost any breach of contract case can also be framed alternatively as a fraud in the inducement case. One merely needs to allege that the breaching party never intended to honor the contract.[2] Conversely, many cases alleging fraud in the inducement could more appropriately be framed in contract. The supreme court, again based on its decisions, has said that it is not the type of tort selected but the character of the loss suffered that determines the applicability of the economic loss rule. While the supreme court may not have considered the issue and certainly has not ruled, even by implication, that fraud in the inducement is always barred by the economic loss rule, Casa Clara indicates that such remedy may be barred unless the claimed fraud is extraneous to the alleged breach of contract. This position, if adopted by the supreme court, would protect contract law from the rising sea of fraud in the inducement cases that are integral to the contract relationship. See Huron Tool, supra.
In Johnson v. Davis, 480 So.2d 625 (Fla. 1985), a case which predates the court's current emphasis on the economic loss rule and a case which was discussed extensively in Judge Lazzara's dissent in Woodson, the supreme court approved a fraudulent misrepresentation action[3] in a situation involving the purchase of a home. Two things need to be noted about Johnson. First, the supreme court expressly found that there was no breach of contract and was searching for a *520 remedy independent of contract. Second, even though the supreme court approved the fraud action, it was an action that sought and obtained a result consistent with the contract remedy of rescissionthe return of the deposit plus interest and costs. The fraud in Johnson (first, deception by silence when there was a duty to speak out, and then later expressly misrepresenting the condition of the home) could just as easily have been brought and, if the economic loss rule applies, may well have to be brought, under a breach of express or implied warranty. Even then, rescission (the return of the deposit) would be a proper remedy.
In determining whether the economic loss rule applies in a given situation, it may not be enough to merely recognize that "[f]raud in the inducement and deceit are independent torts for which compensatory and punitive damages may be awarded." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 661 So.2d 1221 (Fla. 3d DCA 1995), rev. granted, 670 So.2d 938 (Fla.1996). Instead of a bright line rule based on the type of tort employed, the applicability of the economic loss rule may well require a case-by-case analysis.
Huron seems to make a distinction between fraud in the inducement in those situations in which the defrauded party is unable to protect himself and those situations in which self-protection is available. The Huron court explained:
Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freelywhich normally would constitute grounds for invoking the economic loss doctrinebut where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. In contrast, where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.
Huron, 209 Mich.App. at 372, 532 N.W.2d 541 (emphasis added). Thus, under Huron, we should look at the nature of the misrepresentation since fraudulent inducement is limited to those situations in which self-protection is unavailable.[4]
If the only misrepresentation made by the dishonest party in a personal service contract setting relates to the quality or character of the contract itself (and this would include the financial status of the employer), then such misrepresentation would appear to be inextricably intertwined with contract expectations and thus contract remedies, according to the supreme court, would be more appropriate. The prospective employee in such a case should be able to independently verify the financial standing of the employer by examining its financial records or otherwise protect himself or herself within the context of the contract by requiring expenses paid up front, etc.
In our case, after Dwyer and Williams were sued for extortion and conversion, they counterclaimed for damages incurred when counter defendants failed to properly perform their part of the employment agreement. They allege that in negotiating the contract, the counter defendants misrepresented the financial strength of the employing company and, in any event, never intended to honor the terms of the employment contract. They further allege that once the employment commenced, the employer failed to pay all that was due and even the payments that were made were late, causing damage to their credit standing. Based on this misconduct on the part of counter defendants, Williams and Dwyer claim that they gave up certain benefits and suffered expenses in relocating in order to accept the employment (failed economic expectations?) and were additionally damaged because they were not timely or fully paid for their services.
*521 Williams and Dwyer brought their counterclaim in five counts: Violation of the Florida Communications Fraud Act, Common Law Fraud, Breach of Contract, Quantum Meruit, and Breach of Defacto Employment Agreement. The trial court granted a partial summary judgment as to the counts involving fraud because of the economic loss rule. The trial court reasoned that the alleged fraud was part and parcel of the negotiations leading up to or the lack of performance of the executed employment agreement and that breach of the employment agreement was a necessary prerequisite to prove either fraud count.
Since the alleged misrepresentation in our case relates to the value of the product (the financial worth of the company offering the contract) and the losses suffered by Williams and Dwyerrelocation expenses, lost salary, interest on late payment of salaryresult from failed economic expectations, the economic loss rule as set out in Casa Clara, if it can ever apply to fraud in the inducement, seems applicable. Further, since any punitive damages in this case (and the only value in pursuing fraud in a case in which there is a contract remedy providing the same recovery is potential punitive damages) would necessarily be based entirely on the employer's breach of contract, such damages would be inappropriate. As the supreme court stated in Lewis v. Guthartz, 428 So.2d 222, 223-224 (Fla.1982):
The Tenants failed to allege an independent tort in their pleadings and the district court's conclusion that "the tenants failed to allege or prove a tort committed by Guthartz which was distinguishable from or independent of his breach of contract," [Guthartz v. Lewis] 408 So.2d [600] at 602 [(Fla. 3d DCA 1981)], is competently supported by the record.
It is true that the fraud in Lewis was post-contract, not fraud in the inducement. Plaintiffs, as tenants of an elderly housing development constructed with the aid of the Federal Housing Authority under the National Housing Act, were third-party beneficiaries of a regulatory agreement between Guthartz and the FHA. Guthartz charged plaintiff excess rents and then lied to the FHA to cover up his action. But would it have mattered (and should it matter?) if instead of alleging post-contract fraud, plaintiffs had alleged that they had been induced fraudulently to enter into the lease because of the false representation by Guthartz that the rents were in compliance with FHA regulations? If one can avoid the operation of the economic loss rule by merely pleading that the express or implied warranties "fraudulently induced" him to enter the contract, then the imposition of the economic loss rule will result less from the application of legal principles than from the operation of legal malpractice. This rule must mean more than that.
The court stated in Richard Swaebe, Inc. v. Sears World Trade, Inc., 639 So.2d 1120, 1121 (Fla. 3d DCA 1994), in addressing fraud and punitive damages:
Finally, RSI contends that the trial court incorrectly determined that the economic loss rule serves as a bar to RSI's recovery of both its fraud and punitive damages awards. We disagree. The relationship between RSI and SWT was strictly contractual and RSI has not proved that a tort independent of the contractual breaches was committed. The fraud for which the jury found SWT liable was not a separate and underlying tort, but rather merely a breach of the RSI/SWT contracts. See Lewis v. Guthartz, 428 So.2d 222 (Fla.1982) (without proving a separate and independent tort, even flagrant and oppressive breach of contract could not be converted into tort in order to recover punitive damages.) Thus, the trial court properly set aside the award for fraud and punitive damages.
In Swaebe, the alleged "fraud" was pled as a post-contract fraud in that Sears World Trade, Inc., by fraudulent practice, discovered Swaebe's suppliers and dealt with them directly, thereby permitting SWT to ignore some of its contracts with Swaebe. Would the result of Swaebe have been different if Swaebe had alleged that it was fraudulently induced to enter into the contract with SWT (and disclose its suppliers) by SWT's false assurance that it would deal exclusively with Swaebe in obtaining the Venezuelan aluminum? *522 If so, are we not approaching form over substance?
The trial court in our case found that:
2. The allegations of DWYER and WILLIAMS as to the alleged fraudulent pretense, representations, promises or willful and knowing misrepresentations arise out of and are not separate from the allegations of a breach of the performance of a contract.
3. The facts and evidence supporting the alleged violations of the Florida Communications Fraud Act are necessary and essential elements supporting the alleged breach of performance of employment agreements between PEAK RESORTS and DWYER and WILLIAMS.
Although in Acadia Partners, L.P. v. Tompkins, 673 So.2d 487, (Fla. 5th DCA 1996), we recognized that fraudulent inducement may indeed be a separate and independent cause of action from breach of contract, we did not discuss the implication of the economic loss rule under the facts of that case.
Because the alleged misrepresentation in our case relates only to the value of the product (the financial ability of the employing company to meet its obligations) and because Williams and Dwyer are seeking only economic damages unrelated to any personal injury or damage to any other property, the rule of Casa Clara seems to apply. Because our task is more difficult and our risk of error is increased when we ignore the plain language of the supreme court in order to determine what the court actually means, the better rule, the more respectful position, seems to be to assume that the court means what it says until it tells us otherwise.
I would affirm the trial court and certify the question to the supreme court.
NOTES
[1] The summary judgment as to Count IV is no longer an issue in this appeal. Williams and Dwyer concede that the quantum meruit issue became moot once the trial court entered a judgement against Peak Resorts for breach of the employment agreements.
[1] Is society's need for true factual statements in commercial or business relationships (which would normally affect only individual or small groups of complainants) more worthy of judicial protection than society's right to expect safe and dependable products in the marketplace (in which a single act of negligence could affect multitudes)? If the violation of either right results only in the same "economic losses," why should the court treat them differently? Is "tradition" truly the answer?
[2] Because the supreme court expressed concern in Casa Clara, 620 So.2d at 1247, as to whether contract law might drown in a "sea of tort," we should perhaps paraphrase Sancho Panza's concern in Man of La Mancha about the pitcher and the stone:

Whether contract law drowns in a sea of negligence tort or in a sea of fraud in the inducement tort, it's going to be bad for contract law.
[3] There is a question as to whether the Johnson fraud was fraud in the inducement. The supreme court did not refer to it as such in Johnson. Indeed, the express misrepresentation was made post-contract and at worst "induced" the second deposit. The pre-contract silence was referred to as "fraudulent concealment."
[4] This would indicate that it is not the application of the economic loss rule but rather a missing element (reasonable reliance) that would prevent an action for fraud in the inducement in a contract setting when the injured party could have protected himself by a warranty or a performance standard in the contract. The problem with that, however, is that it is difficult to imagine an inducing representation that cannot be covered by a warranty or a performance standard.