620 So.2d 1244 (1993)
CASA CLARA CONDOMINIUM ASSOCIATION, INC., etc., et al., Petitioners,
v.
CHARLEY TOPPINO AND SONS, INC., etc., et al., Respondents.
Christopher H. CHAPIN, et al., Petitioners,
v.
CHARLEY TOPPINO AND SONS, INC., etc., et al., Respondents.
Nos. 79127, 79128.
Supreme Court of Florida.
June 24, 1993.
H. Hugh McConnell and Steven M. Siegfried of Siegfried, Kipnis, Rivera, Lerner & De La Torre, P.A., Coral Gables, and Daniel S. Pearson of Holland & Knight, Miami, for petitioners.
Arthur J. England, Jr., Charles M. Auslander, Alan H. Rolnick of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Lynn E. Wagner and Richard A. Solomon of Cabaniss, Burke & Wagner, P.A., Orlando, for respondents.
Mark Hicks of Hicks, Anderson & Blum, P.A., Miami, amicus curiae for the Babcock Co.
Stephen Wasinger, Elizabeth Norma McKenna, Robert W. Boos, E. Powell Miller and M. Elizabeth Wall of Honigman, Miller, Schartz and Cohn, Tampa, amicus curiae for Pulte Home Corp.
Edwin A. Scales, III and David Brannon of Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Lakeland, amicus curiae for Polk County, Fla.
Donald M. Kaplan of McCarter & English, Boca Raton, and Andrew White, III of Patton, Boggs & Blow, Denver, CO, amicus curiae for Osmose Wood Preserving, Inc. and Hoover Treated Wood Products, Inc.
*1245 William J. Payne, West Palm Beach, amicus curiae for the Florida Concrete and Products Ass'n, Inc.
Kimberly A. Ashby of Maguire, Voorhis & Wells, P.A., Orlando, amicus curiae for Florida Defense Lawyers Ass'n.
Susan E. Trench of Goldstein & Tanen, P.A., Miami, amicus curiae for ORIXGP Intracoastal.
Edward T. O'Donnell of Herzfeld and Rubin, Miami, amicus curiae for the Product Liability Advisory Council, Inc.
G. William Bissett of Hardy & Bissett, P.A., Miami, amicus curiae for Masonite Corp.
McDONALD, Justice.
We review Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc., 588 So.2d 631 (Fla. 3d DCA 1991), and Chapin v. Charley Toppino & Sons, Inc., 588 So.2d 634 (Fla. 3d DCA 1991), because of conflict with Latite Roofing Co. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988), Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981), review denied, 417 So.2d 328 (Fla. 1982), and Adobe Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), review dismissed, 411 So.2d 380 (Fla. 1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. The issue is whether a homeowner can recover for purely economic losses from a concrete supplier under a negligence theory. We agree with the district court that such a recovery cannot be had and approve the decisions under review and disapprove the conflicting decisions.
Charley Toppino & Sons, Inc., a dissolved corporation, supplied concrete for numerous construction projects in Monroe County. Apparently, some of the concrete supplied by Toppino contained a high content of salt that caused the reinforcing steel inserted in the concrete to rust, which, in turn, caused the concrete to crack and break off. The petitioners own condominium units and single-family homes built with, and now allegedly damaged by, Toppino's concrete.[1] In separate actions the homeowners sued numerous defendants and included claims against Toppino for breach of common law implied warranty, products liability, negligence, and violation of the building code. The circuit court dismissed all counts against Toppino in each case. On appeal the district court applied the economic loss rule and held that, because no person was injured and no other property damaged, the homeowners had no cause of action against Toppino in tort. The district court also held that Toppino, a supplier, had no duty to comply with the building code.
Plaintiffs find a tort remedy attractive because it often permits the recovery of greater damages than an action on a contract and may avoid the conditions of a contract. William L. Prosser, The Borderland of Tort and Contract in Selected Topics on the Law of Torts, 380, 425 (Thomas M. Cooley Lectures, 4th Series, 1953). The distinction between "tort recovery for physical injuries and warranty recovery for economic loss" rests
on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.

Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 23, 403 P.2d 145, 151 (1965) (emphasis supplied). An individual consumer, on the other hand,
should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

*1246 Id. (emphasis supplied). Seely sets out the economic loss rule, which prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself.[2]E.g., East River Steamship Corp. v. Transamerica Delaval, Inc. 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987); Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del. 1992). The rule is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Sidney R. Barrett, Jr., Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C.L.Rev. 891, 894 (1989).
Economic loss has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits  without any claim of personal injury or damage to other property." Note, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966). It includes "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages  Tort or Contract?, 114 U.Pa. L.Rev. 539, 541 (1966). In other words, economic losses are "disappointed economic expectations," which are protected by contract law, rather than tort law. Sensenbrenner v. Rust, Orling & Neale Architects, Inc., 236 Va. 419, 374 S.E.2d 55, 58 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 745 P.2d 1284 (1987). This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party. For recovery in tort "there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." Redarowicz v. Ohlendorf, 92 Ill.2d 171, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327 (1982).
The homeowners are seeking purely economic damages  no one has sustained any physical injuries and no property, other than the structures built with Toppino's concrete, has sustained any damage. They argue that holding them to contract remedies[3] is unfair and that homeowners in general should be excepted from the operation of the economic loss rule. We disagree.
In tort a manufacturer or producer of goods "is liable whether or not it is negligent because `public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.'" East River, 476 U.S. at 866, 106 S.Ct. at 2300 (quoting Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436, 441 (1944) (Traynor, J., concurring). Thus, the "basic function of tort law is to shift the burden of loss from the injured plaintiff to one who is at fault ... or to one who is better able to bear the loss and prevent its occurrence." Barrett, supra at 935. The purpose of a duty in tort is to protect society's interest in being free from harm, Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), and the cost of protecting society from harm is borne by society in general. Contractual duties, on the other hand, come from society's interest *1247 in the performance of promises. Id. When only economic harm is involved, the question becomes "whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies." Barrett, supra at 933.
We are urged to make an exception to the economic loss doctrine for home-owners. Buying a house is the largest investment many consumers ever make, see Conklin v. Hurley, 428 So.2d 654 (Fla. 1983), and homeowners are an appealing, sympathetic class. If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. East River, 476 U.S. at 870, 106 S.Ct. at 2301. There are protections for homebuyers, however, such as statutory warranties,[4] the general warranty of habitability,[5] and the duty of sellers to disclose defects,[6] as well as the ability of purchasers to inspect houses for defects. Coupled with homebuyers' power to bargain over price, these protections must be viewed as sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses.[7] Therefore, we again "hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage." Florida Power & Light, 510 So.2d at 902. If we held otherwise, "contract law would drown in a sea of tort." East River, 476 U.S. at 866, 106 S.Ct. at 2300. We refuse to hold that homeowners are not subject to the economic loss rule.[8]
The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. King v. Hilton-Davis, 855 F.2d 1047 (3d Cir.1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products  dwellings  not the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.
We also disagree with the homeowners that the mere possibility that the exploding concrete will cause physical injury is sufficient reason to abrogate the economic loss rule. This argument goes completely against the principle that injury must occur before a negligence action exists. Because an injury has not occurred, its extent and the identity of injured persons is completely speculative. Thus, the degree of risk is indeterminate, with no guarantee that damages will be reasonably related to the risk of injury, and with no possibility for the producer of a product to structure its business behavior to cover that risk. Agreeing with the homeowners' argument would make it difficult "to maintain a realistic limitation on damages." East River, 476 U.S. at 871, 106 S.Ct. at 2302.
*1248 Therefore, we approve the district court's opinions and hold that the economic loss rule applies to the purchase of houses. The cases in conflict, Adobe, Drexel, and Latite, incorrectly refused to apply the economic loss rule to what should have been contract actions, and we disapprove them.[9] We also agree with the district court that the homeowners cannot recover against Toppino under a building code.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
SHAW, J., concurs in part and dissents in part with an opinion, in which BARKETT, C.J., and KOGAN, J., concur.
BARKETT, Chief Justice, concurring in part, dissenting in part.
If the allegations of the homeowners in this case are true, their homes are literally crumbling around them because the concrete supplied by Toppino was negligently manufactured. The homeowners assert that the concrete is now cracking and breaking apart and poses a danger of serious injury. The courts, including this one, have said "too bad."
I find that answer unacceptable in light of the principle underlying Florida's access to courts provision: that absent compelling, countervailing public policies, wrongs must have remedies. Art. I, § 21, Fla. Const. I understand and accept that sometimes the remedies provided cannot be in the full measure that pure justice unfettered by pragmatism can provide. Thus, some applications of the economic loss doctrine may have acceptable viability. But surely it stretches reason to apply the doctrine in this context to deny these homeowners any remedy.
Their claim for breach of implied warranty has been denied (they lack privity with Toppino); their claim that Toppino violated the Florida Building Codes Act has been denied (Toppino, as a material supplier, is not governed by the Standard Building Code); and now their claim in tort has been denied because, notwithstanding their alleged ability to prove that their houses are falling down around them, they have not suffered any damage to their property on the basis that homes are "products."
A key premise underlying the economic loss rule is that parties in a business context have the ability to allocate economic risks and remedies as part of their contractual negotiations. That premise does not exist here. Moreover, I cannot subscribe to the majority's view that the defective concrete has not damaged "other property" in the form of the houses' individual components.
As Justice Shaw notes, the economic loss doctrine surely cannot and should not apply in a situation such as this.
KOGAN, J., concurs.
SHAW, Justice, concurring and dissenting.
While I basically agree that, under a negligence theory, purely economic loss cannot be recovered by parties to a contract when the loss is to the property that is the subject of the contract, I find the logic of the restriction inapplicable in this instance. The rationale of the economic loss rule is that parties who have bargained for the distribution of risk of loss should not be permitted to circumvent their bargain after loss occurs to the property that was the subject of the bargain. Professors Prosser and Keeton in discussing economic loss make the following observation:

*1249 There were two fundamental doctrines pertaining to the liability of a seller for claims based on the interference with intangible economic interests. These were that (1) privity of contract was normally a prerequisite to recovery leading to the conclusion that only a purchaser or one standing in the shoes of a purchaser as a third party beneficiary could sue for breach of a warranty and then only against his immediate seller and (2) disclaimers and other contract provisions which negate warranties, express or implied, or limit the remedy for breach of a warranty  if fairly negotiated and bargained about  were valid and enforceable. There was and is nothing novel or unsound about these propositions so long as liability is based on a representational theory, and on the theory that the parties should be permitted by contract to allocate the risk of losses as they choose.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 95A, at 681 (5th ed. 1984) (emphasis added).
This works well when the loss is suffered by one who is privy to the contract and involves loss that was the subject matter of the contract. It works a mischief, however, where as in this instance the injured party is not privy to the contract but injury to third parties is reasonably foreseeable. The condominium owners here suffered more than the loss of concrete; they suffered the loss of their homes, a foreseeable consequence of faulty concrete. As the court below noted: "The result of this deterioration process [caused by the defective concrete] is a substantial loss of structural integrity in the homes and buildings requiring vast repair work to or replacement of the homes and buildings." Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 588 So.2d 631, 632 (Fla. 3d DCA 1991).
While I agree with the majority opinion that parties who have freely bargained and entered a contract relative to a particular subject matter should be bound by the terms of that contract including the distribution of loss, I feel that the theory is stretched when it is used to deny a cause of action to an innocent third party who the defendant knew or should have known would be injured by the tortious conduct. Toppino knew that the concrete that was the subject matter of the bargain between Toppino and the general contractor would be incorporated into homes that would be bought and occupied by innocent third parties.
When the concrete proved to be contaminated, damages were not limited to simply the loss of concrete; innocent third parties suffered various degrees of damage to structures using the concrete. In my mind, the economic loss theory was never intended to defeat a tort cause of action that would otherwise lie for damages caused to a third party by a defective product. I therefore would approve Latite Roofing Co. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988); Adobe Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), review dismissed, 411 So.2d 380 (Fla. 1981); and Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 1981), review denied, 417 So.2d 328 (Fla. 1982).
BARKETT, C.J., and KOGAN, J., concur.
NOTES
[1] Various contractors built these structures between 1974 and 1981.
[2] The economic loss rule has been adopted in a majority of jurisdictions. See the cases collected in the appendix to William K. Jones, Product Defects Causing Commercial Loss: The Ascendency of Contract over Tort, 44 U.Miami L.Rev. 731, 799 (1990). The rule applies in Florida. E.g., AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987); Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987); GAF Corp. v. Zack Co., 445 So.2d 350 (Fla. 3d DCA 1984); Monsanto Agric. Prods. v. Edenfield, 426 So.2d 574 (Fla. 1st DCA 1982).
[3] As well as suing Toppino, the homeowners also filed contract actions against numerous defendants that are being pursued.
[4] §§ 634.301 et seq., Fla. Stat. (1991).
[5] Gable v. Silver, 264 So.2d 418 (Fla. 1972).
[6] Johnson v. Davis, 480 So.2d 625 (Fla. 1985).
[7] As stated by one commentator, tort law is being used "by litigants and courts to undermine allocations of risks agreed to by the parties and to substitute judicial solutions for contractual arrangements that are almost certainly superior in terms of both fairness and efficiency." Jones, supra note 2, at 798.
[8] Numerous other jurisdictions have also refused to give greater tort remedies to homeowners. E.g., Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del. Super. Ct. 1992); Redarowicz v. Ohlendorf, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 374 S.E.2d 55 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 745 P.2d 1284 (1987).
[9] We also disapprove the following decisions to the extent they conflict with the instant opinion: Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979); Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979); Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978). We also limit A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), strictly to its facts. See AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987); Sandarac Ass'n, Inc. v. W.R. Frizell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992); E.C. Goldman, Inc. v. A/R/C Associates, Inc., 543 So.2d 1268 (Fla. 5th DCA), review denied, 551 So.2d 461 (Fla. 1989).