**In re MASONITE CORP. HARDBOARD SIDING PRODUCTS LIABILITY LITIGATION. This Document Relates to: Civil Action 96–3901 Lennar Homes Inc.**

**Civil Action MDL No. 1098.**

United States District Court,
E.D. Louisiana.

Sept. 16, 1998.

Steven J. Harper, Michael E. Berg, Matthew T. Regan, John F. Hagan, Jeanne M. Oosting, Kirkland & Ellis, Chicago, IL, Phillip A. Wittman, Steven W. Usdin, Stephanie D. Shuler, Stone, Pigman, Walther, Wittman & Hutchinson, L.L.P., New Orleans, LA, Richard C. Stanley, Stanley & Flanagan, L.L.C., New Orleans, LA, for Masonite Corp.

Donni Elizabeth Young, Ness, Motley, Loadholt, Richardson & Poole, New Orleans, LA, for Philip Cuccia.

Patricia Howard, Washington, DC, pro se.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendant's Motion for Summary Judgment. Masonite seeks summary judgment on all of plaintiff Lennar's claims, including five counts of breach of warranty, one count of common law indemnity, and one count of equitable subrogation.

For the reasons that follow, the Motion is GRANTED in part and DENIED in part.

### Background

The facts are by now well-known. Between 1983 and 1992, Lennar Homes built thirty-two buildings in a Florida condominium development known as Lakeview Village. Lennar installed Masonite's exterior hardboard siding on the buildings after purchasing the siding from supply stores and subcontractors. Several years after the construction was completed, Lakeview Village residents observed that some of the siding was deteriorating by rotting, buckling, and swelling.

After the Homeowners' Association complained to Lennar, both Masonite and Lennar hired experts to inspect the damage. Lennar repaired the damaged siding and took an assignment of the homeowners' claims against Masonite. In July 1996, Lennar Homes filed suit against Masonite, alleging claims for (1) breach of express warranty, (2) breach of common law implied warranty, (3) breach of statutory implied warranty of merchantability, (4) breach of statutory implied warranty of fitness for a particular purpose, (5) breach of statutory express warranty, (6)common law indemnity, and (7) equitable subrogation. Defendant now moves for summary judgment on all claims.

### Law and Application

#### I. Summary Judgment Standard

The Court begins with the familiar summary judgment standard. Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

In addition, if the party opposing the motion fails to establish an essential element of his case, summary judgment is proper. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the summary judgement motion, a court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

#### II. Choice of Law

■ In this multi-district litigation, the Court is obliged to apply the law that would be applied by the transferor court. *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.,* 170 F.R.D. 417, 422 (E.D.La. 1997); *see also Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). Because this case was transferred from the Southern District of Florida, the Court will apply Florida choice of law rules to this diversity action.

■ The parties agree, and the Court concurs, that Florida law applies to the indemnity and subrogation claims. *See LaFarge Corp. v. Travelers Indemnity Co.,* 118 F.3d 1511, 1515 (11th Cir.1997). They part ways, however, as to the applicable rules of decision for the warranty claims.[1]

■ Absent an express choice of law provision, a sale of goods transaction that implicates warranty is governed by the law of the state bearing an "appropriate relation" to the transaction. *Pulte Home Corp., Inc. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1482 (M.D.Fla.1992); Fla.Stat. ch. 671.105. Florida courts also employ the approach of the

---

**1.** Florida law requires that a separate choice of law analysis be made with respect to each theory of liability. *Trumpet Vine Investments, N.V. v.* *Union Capital Partners I, Inc.,* 92 F.3d 1110, 1115 (11th Cir.1996).

Restatement (Second) of Conflict of Laws section 188. *LaFarge,* 118 F.3d at 1515; *Pulte Home,* 804 F.Supp. at 1482.

Under the Restatement's "significant relationship" test, the Court applies the law of the state that has the most significant contacts with the parties and subject matter of the case. The Court will consider a variety of factors, including the (1) place of contracting, (2) place of negotiation, (3) place of performance, (4) location of the contract's subject matter, and (5) place of incorporation or place of business of the parties. *Pulte Home,* 804 F.Supp. at 1482 (citing Restatement (Second) of Conflict of Laws § 188).[2] The place of delivery, which is the place of performance, should be given the highest priority. *Id.; cf. Hopkins v. Lockheed Aircraft Corp.,* 201 So.2d 743, 751–52, *on reh'g from* 201 So.2d 743 (Fla.1967) (holding that place of accrual of damage, not place of manufacture, determines governing law for warranty claim); *Whittington v. Laney,* 566 So.2d 599, 599 (Fla.Dist.Ct.App.1990) (holding that action for breach of warranty accrues where goods are delivered).

On balance, these factors weigh in favor of applying Florida law. Both parties have an undeniable relationship with Florida; in contrast, plaintiff and the homeowners have little or no connection with its competitor in this analysis, Mississippi, other than the fact that Masonite siding is manufactured there. Plaintiff admits that defendant unilaterally drafted its express warranty and plaintiff had no opportunity to negotiate a warranty with defendant in Mississippi. To be sure, plaintiff and the homeowners had no relationship, contractual or otherwise, with defendant until the goods were delivered and installed in Florida.

The Court is not persuaded that the place of manufacture should be decisive in this analysis. Assuming all the siding was manufactured in Mississippi, it is equally pertinent that all of the product at issue was shipped to a single state—Florida. Indeed, the location of the homes on which Masonite siding was

installed is no more fortuitous than the place of manufacture. *Cf. Hopkins,* 201 So.2d at 752 (noting that place of accident is fortuitous, but nonetheless of "primary importance"). Moreover, the breach of any warranty could have occurred only where the product deteriorated: Florida, in this case.

Furthermore, plaintiff specifically complains that the siding could not withstand the extreme climate of Florida. The claim that the location of deterioration is merely fortuitous belies the suggestion that defendant should be liable for breaching an implied warranty of fitness for a particular purpose, namely, installation in Florida. Thus, Florida likely has a strong interest in supplying the applicable rules of decision to protect its citizens from products that cannot withstand the state's extreme weather conditions.

Additionally, the warranty claims are somewhat analogous to insurance contracts that protect an insured from risks that are associated with the location of the insured. A warranty similarly might be understood to protect consumers from damages that accrue in the consumers' locale. *Cf.* Restatement (Second) Conflict of Laws § 188 comments and § 192. Thus, the Court finds that the place of delivery, Florida, has the most significant connection in this setting. *See Pulte Home,* 804 F.Supp. at 1482 (determining that state with "appropriate relation" to warranty claim was state where homes were located). Accordingly, the Court concludes that Florida law governs the warranty claims.

### III. Analysis

#### A. Warranty

To prevail on its warranty claims, plaintiff must prove five elements: (1) facts respecting sale of a product supporting a warranty, either express or implied; (2) reliance on representations of the seller constituting the warranty; (3) notice of breach; (4) injuries caused by the breach; and (5) damages. *Weimar v. Yacht Club Point Estates,*

---

**2.** Plaintiff also cites as relevant factors the state-related policies favoring application of a particular state's law and the place of manufacture. These factors are not mentioned among those enumerated in the Restatement. Nonetheless, the Court deems them helpful in consideration of the other factors.

*Inc.,* 223 So.2d 100, 104 ( Fla.Dist.Ct.App. 1969). The first two are pivotal here.

### 1. *Privity*

█ The first element requires that plaintiff demonstrate privity between plaintiff and defendant. *Kramer v. Piper Aircraft Corp.,* 520 So.2d 37, 39 (Fla.1988). Privity is required for both express and implied warranties. *Elizabeth N. v. Riverside Group, Inc.,* 585 So.2d 376, 378 (Fla.Dist.Ct.App.1991) (citing *Navajo Circle, Inc. v. Development Concepts Corp.,* 373 So.2d 689, 692 (Fla.Dist. Ct.App.1979)).

Although plaintiff relies on *Manheim v. Ford Motor Co.,* 201 So.2d 440, 441–42 (Fla. 1967), for the proposition that privity is not required on warranty claims, plaintiff is mistaken. Although not expressly overruled, insofar as the *Manheim* decision jettisons the privity requirement it has been effectively overruled by *Kramer,* 520 So.2d 37, and its progeny.

Plaintiff's reliance on *Cedars of Lebanon Hosp. Corp. v. European X–Ray Distribs.,* 444 So.2d 1068 (Fla.Dist.Ct.App.1984) is similarly misplaced. There the court surveyed conflicting jurisprudential developments but concluded that certain facts made "resolution of [the privity] issue unnecessary." *Id.* at 1072 & n. 4 (finding that the facts supported the existence of privity). To be sure, the Court noted that the privity rule has been eroded or relaxed, particularly in the products liability context. Plaintiff, however, misstates the *Cedars* holding. The *Cedars* court ruled that privity is not required in the strict liability context, but the court acknowledged the "abundance of uncertainty" regarding the contours of privity in contract claims involving only economic loss. *Id.* at 1071. In light of the Florida high court's more-recent decision in *Kramer,* privity of contract is required for warranty claims.

█ Neither Lennar nor the homeowners were in privity of contract with Masionite. "A plaintiff who purchases a product," one court writes, "but does not buy it directly from the defendant, is not in privity with that defendant." *T.W.M. v. American Medical Sys., Inc.,* 886 F.Supp. 842, 844 (N.D.Fla.

1995) (citing U.C.C. § 11–2). It is not claimed that plaintiff bought Masonite siding directly from defendant. Nor did plaintiff have any oral or written contract with defendant. Thus, plaintiff was not in privity with defendant. This does not end the inquiry, however.

### a. *Third-party beneficiary*

█ Literal privity can be finessed by a proxy: direct beneficiary or third-party beneficiary status. *See, e.g., Warren v. Monahan Beaches Jewelry Ctr., Inc.,* 548 So.2d 870 (Fla.Dist.Ct.App.1989); *see also* Fla.Stat. § 672.318 (providing for extension of warranties to certain third-party beneficiaries). Of course, exceptions to the privity requirement should be narrowly construed to assure that the defendant will not face virtually unlimited liability to a host of unanticipated parties who are strangers to the contract. *See Florida Bldg. Inspection Servs., Inc. v. Arnold Corp.,* 660 So.2d 730, 731 (Fla.Dist.Ct.App. 1995) (discussing limits of third-party beneficiary status and economic loss rule).

█ The extension of warranties to certain third-party beneficiaries is mandated in a limited way by Florida's Uniform Commercial Code. *See* Fla.Stat. § 672.318. This statute provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude nor limit the operation of this section.

*Id.* Plaintiff's claims do not fall within the reach of this provision. *Cf. Barry v. Ivarson Inc.,* 249 So.2d 44 (Fla.Dist.Ct.App.1971) (declining to extend third-party beneficiary status beyond plain wording of statute). However, this statute does not restrict resort to the developing common law principles of beneficiary status. *See* Fla.Stat. § 672.318 comment 3. And that is where this analysis must go.

 Third-party beneficiary status is a matter of contract interpretation; it extends only to those parties contemplated by the contract. *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397, 399 (Fla.1973) ("Privity is a theoretical device of the common law that recognizes limitation of liability commensurate with compensation for contractual acceptance of risk."); *see also Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc.,* 609 So.2d 1349, 1353 (Fla.Dist.Ct.App.1992). The privity requirement is relaxed only if the purchasers were "intended and known beneficiaries of the contract." *First Am. Title Ins. Co. v. First Title Service Co.,* 457 So.2d 467, 471–73 (Fla.1984). Contract beneficiaries must be "specifically identifiable" and accorded that status through the contractual mechanism. *See Sandarac,* 609 So.2d at 1353.

 With the possible exception of defendant's limited express warranty, plaintiff and the homeowners cannot be considered third-party beneficiaries. Plaintiff essentially argues that it and the homeowners must be treated as third-party beneficiaries because it was foreseeable—indeed, inevitable—that the siding would be in the homeowners' possession after it is installed. Foreseeability, however, does not confer beneficiary status; otherwise, the contours of contractual relationships would disintegrate. *See A.R. Moyer,* 285 So.2d at 399; *Sandarac* at 1353.

The Court is not swayed by plaintiff's invocation of *Warren v. Monahan Beaches Jewelry Ctr., Inc.,* 548 So.2d 870 (Fla.Dist.Ct.App. 1989) and *Crabtree v. Aetna Casualty & Surety Co.,* 438 So.2d 102 (Fla.Dist.Ct.App. 1983). In *Warren,* the defendant jeweler knew that a (fake) diamond engagement ring was destined "specifically for" the plaintiff. *Warren,* 548 So.2d at 871. The defendant also agreed with plaintiff to replace the ring.

The course of dealings before and after the sale established a clear intent to sell a specific ring for the benefit of a particular woman. *Id.* at 872; *see also Goodell v. K.T. Enter., Ltd.,* 394 So.2d 1087 (Fla.Dist.Ct.App.1981) (finding plaintiff was third-party beneficiary where defendant built conveyor system specifically for plaintiff's business, there were discussions between the parties regarding the product, and the contract referred to the plaintiff); *cf. Cedars,* 444 So.2d 1068 (finding privity where defendant "called upon" plaintiff and had shown samples of the product to plaintiff). In the case of Lennar Homes, there is no allegation that defendant knew the siding ultimately would be used by this particular plaintiff and these homeowners.

The *Crabtree* decision also does not support plaintiff's position. There, a surety performance bond was issued for the benefit of a building partnership and the tract's owners to secure the performance of the contractor. Unlike the situation in *Crabtree,* defendant here has made no promises to plaintiff or any specifically identifiable homeowners, with the exception of the limited express warranty which makes reference to the "homeowners." [3]

Plaintiff draws attention to Masonite's advertising brochures, but plaintiff's receipt of advertising brochures does not compel a different conclusion. It is undisputed that the homeowners did not receive any of this advertising; thus there is no basis for finding a contractual relationship with them. As to plaintiff, the only suggestion of direct contact with defendant is the conclusory allegation in the complaint.[4] The sworn deposition testimony of Lennar's vice president Sherman Kronick, however, concedes that there was no correspondence between the parties.[5]

---

3. The limited warranty is discussed below.

4. Plaintiff makes note of this Court's previous decision, *In re Masonite,* 170 F.R.D. at 418, in which the Court stated that defendant made representations to builders and homeowners. The Court's general statement in the context of nationwide plaintiffs seeking class certification, however, cannot be construed as a finding that defendant made representations to this plaintiff or these specific homeowners, nor is it a finding

that defendant made any representations specifically relating to the Lakeview project.

5. Plaintiff complains that defendant "did not ask the relevant questions" of Kronick, and thus should not be able to "cry foul" over the limited responses. The Court is unpersuaded. Plaintiff itself had the opportunity to secure testimony with the "right questions" in support of its position. The Court will not hear plaintiff to com-

Even if the Court credits his belated declaration—which incidentally contradicts his earlier testimony—Kronick only adds that he "received" defendant's brochures. Conspicuously, he does not state from whom he received these brochures, other than asserting that advertisements were viewed in trade journals and at trade events. He also does not state that those received were related to the Lakeview project. He provides no evidence that creates a material issue of fact on this record.

There is no suggestion that defendant solicited plaintiff's business for the Lakeview project. Plaintiff does not even hint that it made any inquiries to which defendant responded. Other than generalized advertising, there is no indication that defendant directly encouraged plaintiff to use Masonite siding for this project, or for any other development. Even assuming defendant's advertising could somehow give rise to a warranty, there is no support for finding that the general advertising transforms this particular plaintiff into an intended third-party beneficiary because there was no direct contact between defendant and plaintiff regarding the Lakeview project. At best, one could argue for a statutory express warranty in favor of defendant's distributors and suppliers; but, absent privity, this warranty does not run in favor of plaintiff or the homeowners. *See* Fla.Stat. § 672.313 (Claimed warranty must be made "part of the basis of the bargain" between buyer and seller.).

That defendant has not conferred third-party beneficiary status upon plaintiff or the homeowners is further bolstered by reading section 718.203 of the Florida Statutes, for example, in conjunction with the third-party beneficiary rule. This section imposes upon the developer certain implied warranties in favor of individual condominium unit owners. Fla.Stat. § 718.203. It contemplates that a manufacturer's warranties may not be auto-

matically assigned or otherwise extended to the ultimate purchasers; thus, the legislature has required developers to provide minimal warranties.

It is plain that the homeowners and Lennar Homes could have been made express third-party beneficiaries in the developer's contract, *Sandarac,* 609 So.2d at 1354, or plaintiff could have demanded an assignment of all applicable manufacturer warranties from its suppliers and contractors. *Ashley Square, Ltd. v. Contractors Supply of Orlando, Inc.,* 532 So.2d 710, 711 n. 1 (Fla.Dist.Ct. App.1988). Simply put, they could have demanded additional warranties as part of their bargain. *See Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244, 1247 (Fla.1993). They did not do so.

*b. Alternate tort remedies*

Because there is no privity of contract, plaintiff cannot maintain a cause of action for breach of a common law implied warranty; the sole remedy is in strict liability for tort. *See Kramer,* 520 So.2d 37 (citing *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976)). Thus, the implied warranty claim must be dismissed. *See Spolski Gen. Contractor, Inc. v. Jett–Aire Corp. Aviation Management of Central Florida, Inc.,* 637 So.2d 968, 969–70 (Fla.Dist.Ct.App.1994) (affirming summary judgment for breach of express and implied warranty claims where there was no privity).

Likewise, in the absence of privity, there is no cause of action for breach of a statutory implied warranty of merchantability or fitness for a particular purpose.[6] *Ashley Square,* 532 So.2d at 711 n. 1 (citing *Kramer,* 520 So.2d 37); *Cedars,* 444 So.2d at 1072 n. 4 (noting that there could not be liability for breach of warranties absent privity) *cf. Casa Clara,* 620 So.2d at 1245 ("He

plain that it failed to fill in the gaps in Kronick's testimony.

6. There also is no merit to plaintiff's claim for breach of an implied warranty of fitness for a particular purpose. The siding was used only for its ordinary purpose—as exterior siding on a residential home. The product is used ordinarily in a variety of climates. The claim that use in

the Florida climate constitutes a "particular purpose" would lead to the extraordinary conclusion that use of the product in every unique locale is a "particular purpose." Such a reading of warranty law would render claims for breach of the warranty of merchantability meaningless as the former would entirely consume the latter rule.

cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.") (internal quotation omitted). Quite simply, defendant has not promised to plaintiff or the homeowners that its product will meet all their expectations.

■ As master of its complaint, plaintiff has not alleged a negligence or strict liability claim. *See United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir.1997) ("The plaintiff selects the claims that will be alleged in the complaint."); *see also Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1385 (11th Cir.1989) ("The pleader of course will have to take the bad with the good, and will not be free henceforth to invoke" an alternative theory of recovery.). The complaint cannot be construed to state a strict liability claim because plaintiff has not alleged all the elements of such a claim. For example, plaintiff does not allege that Masonite siding is unreasonably dangerous. *See West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla.1976) (identifying elements of strict liability claim).

■ What about a claim for negligence? Even were the Court to construe plaintiff's complaint as stating a negligence claim, that claim would be barred by the economic loss rule. Ordinarily, plaintiffs seeking only economic losses are precluded from seeking tort damages and must proceed in contract. "Economic losses" generally include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244, 1246 (Fla.1993) (internal quotation omitted). The economic loss rule generally prohibits recovery when a product damages itself. *Id.* at 1245.

■ Plaintiff and the homeowners seek recovery for expenditures related to the labor and costs of replacing the deteriorated siding; apparently, they also seek additional monies for water damages and infestation in areas where the siding has deteriorated. These additional damages do not qualify as damages to "other property" recoverable in tort.

The character of a loss is determined by looking at the product purchased by the plaintiffs—a home—not the product sold by the defendant. *Casa Clara*, 620 So.2d at 1247. Homeowners bargain for finished products, not the component parts. *Id.* Accordingly, the hardboard siding is considered part of the finished product—the dwelling—and any further damages to the dwelling (water damage or infestation, in this case) are considered merely part of the damage to the product itself. *See id.* Thus, tort recovery would be barred by the economic loss rule.[7] *Id.*

### c. Unfair result?

The Florida Supreme Court has considered the harsh consequences that could result from the failure to negotiate adequate contract or warranty remedies in a situation similar to the one before the Court. In *Casa Clara*, condominium homeowners sued a concrete supplier for product defects evidenced by disintegration of the concrete, which in turn damaged the house structures.

The court recognized that homeowners are an "appealing, sympathetic class," because the purchase of a house is a substantial investment for most people. *Casa Clara*, 620 So.2d at 1247. No doubt, foiled expectations can be devastating to a homeowner. Nonetheless, the supreme court found no legitimate course to deviate from the admittedly

---

**7.** The Florida Supreme Court has recognized the difficult "catch–22" facing consumers who cannot state a contract claim for lack of privity or an appropriate proxy. Thus, in certain circumstances the court has carved out an exception to the economic loss rule and allowed recovery in tort where contract remedies are unavailable. *See A.R. Moyer*, 285 So.2d 397. This decision has been limited strictly to its facts, however.

*Casa Clara*, 620 So.2d at 1248 n. 9; *AFM Corp. v. Southern Bell Tel. and Tel. Co.*, 515 So.2d 180, 181 (Fla.1987). Specifically, the supreme court noted that the decision was based on the fact that the supervisory responsibilities vested in the architect carried a concomitant duty not to injure foreseeable parties not beneficiaries to the contract. *AFM Corp.*, 515 So.2d at 181; *see also First Am. Title Ins.*, 457 So.2d at 471–72.

harsh outcome when a consumer is caught between the Scylla of no contract remedy (for lack of privity) and the Charybdis of tort recovery barred by the economic loss rule. *See id.* at 1245 (recognizing that plaintiffs seek tort remedies hoping to avoid "the conditions of a contract"); *but cf. id.* at 1248 (dissenting opinion) (expressing disapproval where result is to "deny these homeowners any remedy").

The court noted the availability of other protections such as the seller's duty to disclose known defects, the buyer's ability to inspect the home for defects, and certain warranties. Perhaps most significantly, purchasers can haggle over price to bargain for their protections. *Id.* at 1247. In this manner, a contract can safeguard that consumers receive the "benefits of [their] bargain" and settled "expectations." *Id.* at 1246.

To be sure, the Florida high court did not misapprehend the policy implications of its decision: This situation tests "whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies." *Casa Clara,* 620 So.2d 1244, 1247 (internal quotation omitted). Despite foreclosing all remedies to the homeowners, the Florida court concluded that the homeowners ought to answer for their own (inadequate) bargain. This Court is constrained by Florida law and reaches a similar conclusion. *See Venn v. St. Paul Fire And Marine Ins. Co.,* 99 F.3d 1058, 1064 (11th Cir.1996) (A federal court sitting in diversity must follow controlling state supreme court precedent "regardless of the reasoning used by that court to reach" its conclusion.).

#### d. Limited warranty

Although most remedies are foreclosed, plaintiff has one potential model of relief: the homeowners' assignment of defendant's express limited warranty. The plain language of the limited warranty runs in favor of the "owners" or "homeowners," making the homeowners warranty beneficiaries.[8]

#### 2. Reliance

Plaintiff's assigned express warranty claim, however, fails for lack of reliance. Plaintiff concedes that reliance is required to state a claim for breach of an express warranty. *See Weimar,* 223 So.2d at 104. It is undisputed that the homeowners did not rely on the defendant's express limited warranty. The only homeowners identified by plaintiff as potential trial witnesses (Carole Moore and Dorothy Brown) have testified that they did not even know that Masonite siding would be used in their condominiums. Furthermore, they state that no one from defendant made any representations to them regarding the quality of Masonite siding. And they add that they did not rely on any aspect of the warranty as a basis for the purchase of their condo units.

Plaintiff contends that reliance is manifest because the homeowners relied on the skill and judgment of the siding manufacturer. This claim is not supported by the record. The homeowners were unaware that Masonite siding had been used on their homes. Thus, the fact of non-reliance is an inescapable conclusion.[9]

Plaintiff complains that defendant attempts to attach some significance to the fact of non-reliance. Additionally, plaintiff charges that it is absurd to prevent the ultimate users of the product from having a remedy on this basis. Absurd it may be argued, but this is the inescapable law of Florida. The fact of non-reliance is not only significant, it is dispositive. *See Spolski,* 637 So.2d at 969 (affirming summary judgment on warranty claims because contractor did not rely on manufacturer's warranty). Plain-

---

8. There is no merit to plaintiff's contention that the term "owner" extends to plaintiff. Plaintiff does not "own" the siding inasmuch as the condominium units were sold to the individual homeowners. Furthermore, plaintiff's contention is betrayed by plaintiff's argument that the warranty must run in favor of the homeowners because only they would be in "possession" of the siding for the duration of the twenty-five year express warranty.

9. If anything, the homeowners relied on the skill and knowledge of plaintiff; one may presume the homeowners thought the developer would choose appropriate building materials.

tiff cannot prevail on the warranty claim without a showing of reliance.[10]

### B. Indemnity

Lennar Homes is entitled to indemnification if there is a "special relationship" between it and Masonite making plaintiff only "vicariously, constructively, derivatively, or technically liable" to the homeowners for the wrongful acts of defendant—the siding manufacturer. *Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 492 (Fla. 1979). Indemnification is allowable, however, only if plaintiff is entirely without fault and defendant is wholly responsible for the damages. *Id.* at 493.

A threshold difficulty with plaintiff's indemnity claim is that plaintiff entered into a settlement with the homeowners before a court could determine that plaintiff's liability, if any, was only vicarious, constructive, derivative or technical. *See Houdaille,* 374 So.2d 490. Thus, plaintiff's indemnity claim turns on its ability to ascribe the settlement payment to its vicarious liability for defendant's negligence. *Safecare Med. Ctr. v. Howard,* 670 So.2d 1020, 1022 (Fla.Dist.Ct.App.1996).

Obviously, plaintiff's settlement with the homeowners does not constitute a binding admission by plaintiff that it was at fault. *Mortgage Guarantee Ins. Corp. v. Stewart,* 427 So.2d 776, 780 (Fla.Dist.Ct.App.1983) ("[S]ettlements or offers of settlement have never been considered admissions against interest binding on the parties making them."). The Court must not punish plaintiff, by barring indemnification, for having entered into a settlement agreement with the homeowners; instead, the Court must determine whether plaintiff settled claims for which it could seek indemnification. *Association for Retarded Citizens v. State Dep't of Health and Rehabilitative Servs.,* 619 So.2d 452, 454 (Fla.Dist.Ct.App.1993) (recognizing need to balance liability rules against "public policy which encourages settlements").

Plaintiff must establish (1) that its settlement was attributable to its vicarious liability to the homeowners, and (2) that the settlement was reasonable. *Metropolitan Dade County v. Florida Aviation Fueling Co.,* 578 So.2d 296, 298 (Fla.Dist.Ct.App. 1991). The indemnity claim is defeated if plaintiff voluntarily settled, but in fact had no vicarious liability to the homeowners. *See Buettner v. Cellular One, Inc.,* 700 So.2d 48, 48 (Fla.Dist.Ct.App.1997) ("[A] principal cannot be held liable if the agent is exonerated."); *cf. Sherrill v. Corbett Cranes Servs., Inc.,* 656 So.2d 181, 183 (Fla.Dist.Ct.App. 1995) ("[C]rane company's payment to the injured employee had been voluntary and [thus] an action for indemnity would not lie . . . .").

Florida courts have struggled with the significance of the "special relationship" instruction in *Houdaille.* However, one thing is clear: The parties need not have a contractual relationship. The obligation to indemnify may be imposed by law absent a specific relationship between the parties. *Larjim Management Corp. v. Capital Bank,* 554 so.2d 587.

This matter presents a case for indemnity[11] quite similar to one recognized by the *Houdaille* decision of the Florida Supreme Court. In *Houdaille,* the court stated that where a manufacturer is liable for breach of a product's warranty because of a defective component part supplied by another, the manufacturer "could be without fault insofar as its relationship with the supplier of the component part is concerned . . . ." *Houdaille,* 374 So.2d at 493 n. 3; *see also K–Mart Corp. v. Chairs, Inc.,* 506 So.2d 7 (Fla.Dist. Ct.App.1987) (holding that retailer's strict liability for sale of defective product or breach of implied warranty is not "wrongful conduct" which bars indemnity). Similarly, plaintiff might be liable, though faultless, for a breach of an implied warranty on the

---

**10.** The warranty claim also falters because plaintiff has not satisfied the warranty's condition precedent to recovery: the siding must have been "installed according to manufacturer's published application instructions." Plaintiff admits that at least some of the siding was not properly

installed more than six inches from the grade, in dereliction of the instructions.

**11.** That is, assuming plaintiff was vicariously liable to the homeowners and the settlement was not merely voluntary.

homeowners' dwellings because defendant supplied a defective component—Masonite siding.

Defendant does not claim that plaintiff had any sort of duty to inspect for latent defects; nor is there any suggestion that plaintiff knew or should have known of the alleged defects. Thus, if plaintiff is liable to the homeowner for the emergence of some latent product defect, plaintiff's liability would be only passive or vicarious. In such a case, plaintiff should be entitled to seek indemnity from defendant, the product's manufacturer. *Pender v. Skillcraft Indus., Inc.*, 358 So.2d 45, 46 (Fla.Dist.Ct.App.1978). But plaintiff's indemnity relief seems terribly cramped.

The Court emphasizes that plaintiff's indemnity claim survives only to the extent that defendant's product is found defective and wholly to blame for the deterioration. Absent a product defect, the requisite "special relationship" is lacking. As noted earlier (in the context of warranty third-party beneficiary status) plaintiff has not shown any direct nexus between it and defendant with respect to the Lakeview project. Moreover, there is no indication that defendant solicited plaintiff's business for this particular project, other than general advertising disseminated to the industry at large.[12] Because the parties did not have any special relationship for the Lakeview project, there can be no additional basis for indemnity. *Spolski*, 637 So.2d at 970.[13]

The cases relied upon by plaintiff do not instruct a different result. Plaintiff casts its argument on the *Larjim* court's bald statement that the "obligation to indemnify need not derive from a specific relationship." 554 So.2d at 588. When read in context with the facts, however, it appears that a special relationship nevertheless existed. There, the defendant improperly endorsed checks and deposited them in his bank account. The court required the defendant to indemnify Capital Bank after the bank was sued for reimbursement of those funds. Unlike plaintiff here,

the *Larjim* defendant's actions directly impacted the bank, thus giving rise to a cause for indemnity.

A virtually identical tale is found in *Capital Bank v. Meyers*, 573 So.2d 120 (Fla.Dist.Ct. App.1991). The defendants in *Meyers* were principals in a brokerage corporation "who had finagled the bank to distribute to them the $45,000 in question." *Id.*, at 120. This sort of direct contact is absent in the present case. Thus, unless plaintiff proves a product defect, there can be no claim for indemnity.

The Court must also observe that plaintiff's ability to seek indemnity is frustrated to the extent that plaintiff admits to its faulty installation of the siding, in some instances. Any fault on the part of plaintiff, "no matter how slight the fault," will bar indemnity recovery. *Houdaille*, 374 So.2d at 494. Plaintiff's detailed cost summary amply demonstrates that plaintiff concedes some of the damages were caused by plaintiff's own faulty installation. Furthermore, plaintiff's witnesses, Sherman Kronick, Lance Atkins, and Joseph Lstiburek, admit that the siding was improperly installed too close to the ground. This fault, although perhaps slight, precludes indemnification.

Plaintiff simply offers no competent evidence to avoid the possibility that bad installation caused some damage. Instead, plaintiff merely states that the siding failed "regardless of installation." Nonetheless, the Court cannot ignore plaintiff's admission of some fault, particularly as evidenced by plaintiff's own cost summary. Plaintiff can not now claim that its faulty installation of the product did not contribute somewhat to the product's deterioration. Installing the product too close to the ground may well have contributed to the absorption of water, leading to the ultimate deterioration. Thus, the clear implication of plaintiff's claim is not that bad installation caused none of the damage, but that the siding "would have failed anyway." (The alleged inherent de-

---

12. Plaintiff has not sought leave to amend to state a claim for contractual indemnity. In any case, the facts do not support finding an implied contract because plaintiff has not established that the parties had any relationship regarding the Lakeview project.

13. Significantly, the *Spolski* court denied a continuance on the summary judgment hearing to allow the plaintiff to produce expert evidence on the issue of product defect. *Id.*

fect does not weaken the fact of plaintiff's added fault which, for example, may have accelerated or worsened damages).[14] Furthermore, plaintiff cites no authority, nor has the Court uncovered any cases, to suggest that proof of an inherent defect renders irrelevant (in the context of indemnity) some added fault of the plaintiff.

Plaintiff's claim that it is seeking indemnification only for those damages caused by defendant is unavailing. The Court agrees with defendant that plaintiff's argument is circular. Plaintiff cannot avoid the no-fault predicate to indemnification simply by claiming that it will not seek those damages caused by its own fault. This end-run attempt to circumvent the no-fault rule would contravene Florida's policy against weighing the relative faults of the indemnitee and indemnitor. *See Houdaille,* 374 So.2d at 493. Even assuming a jury can adequately sort out the relative faults, such determination has no place under an indemnification theory.

Plaintiff's cost summary, however, asserts numerous instances in which defendant was one-hundred percent responsible for the product's failure. Thus, plaintiff will be entitled to indemnification if it proves that the siding's deterioration can be attributed solely to a product defect and that plaintiff did not contribute any additional fault.[15]

### C. Subrogation

 The common theme of this decision also compels the Court to hold that plaintiff cannot recover under its subrogation claim. The party seeking equitable subrogation (the subrogee, or plaintiff) must step into the shoes of the actual creditor and subrogor—the homeowners in this case. *Benchwarmers, Inc. v. Gorin,* 689 So.2d 1197, 1198 (Fla.Dist.Ct.App.1997) (citing 30 Fla.Jur. Subrogation § 11). The doctrine applies when the subrogee is entitled "to succeed to all the remedies which the creditor possessed against the original obligor" (de-

fendant, here). *In re Munzenrieder Corp.,* 58 B.R. 228, 231 (M.D.Fla.1986). Thus, plaintiff has only those rights which the homeowners had against defendant. *Casualty Indemnity Exchange v. Penrod Bros., Inc.,* 632 So.2d 1046, 1047 (Fla.Dist.Ct.App. 1993). The subrogee "must exercise such rights under the same conditions and limitations as were binding on the creditor [subrogor], and hence, can be subrogated to no greater rights than one in whose place he has substituted." *Blue Cross/ Blue Shield United v. Inverrary Hotel Corp.,* 579 So.2d 863, 864 (Fla.Dist.Ct.App.1991) (quoting *Jones v. Bradley,* 366 So.2d 1266 (Fla.Dist.Ct.App. 1979) (alteration in original)). Because the Court has concluded that the homeowners do not have any viable claim against defendant, plaintiff's subrogation claim necessarily fails.

The Court is not persuaded by plaintiff's prosaic suggestion that it is entitled to subrogation because subrogation is an equitable remedy. Plaintiff urges that it is entitled to subrogation because it is a builder who "stands behind its product, pays substantial monies to correct a deficiency caused by another and [ ] the wrongful party, Masonite, ignores its legal responsibility for the failures of its product." This claim reflects plaintiff's misunderstanding of the proper role for equitable considerations.

 Plaintiff correctly states that the doctrine of subrogation is animated by an equitable policy of preventing unjust enrichment. Nonetheless, subrogation only allows recovery against a party whom the subrogor (homeowners) "could have sued initially." *Attorneys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc.,* 547 So.2d 1250, 1252 (Fla. Dist.Ct.App.1989). This case does not involve unjust enrichment because defendant was not otherwise obliged to pay the homeowners; put another way, plaintiff has not paid the homeowners anything that defendant was obligated to pay.[16]

---

**14.** Lstiburek's conclusory claims that defendant is wholly responsible for the damages, and that the method of installation is irrelevant, do not trump plaintiff's fault.

**15.** The Court need not reach the issue of certainty of damages because the apportionment problem is not helpful in the indemnity context.

**16.** Indeed, to the contrary, it might constitute unjust enrichment to allow plaintiff to recover

Plaintiff misapplies the *West American* court's understanding of equity. *See West Am. Ins. Co. v. Yellow Cab Co.*, 495 So.2d 204 (Fla.Dist.Ct.App.1986). There the court found it "equitable" to require the defendant to pay the subrogee because the subrogee settled a claim for which the defendant was legally responsible. *See id.* at 206 (allowing subrogation where subrogee could not seek contribution, but subrogee had discharged defendant's "legal obligation"). Thus, the use of "equity" touches upon the relationship between the defendant and plaintiff as subrogee; it is not an unchecked principle of conscience that allows recovery whenever it seems fair or right to make the defendant pay for the subrogor's losses that defendant is not legally obligated to pay.

Similarly, the *Transport* court invoked equitable principles while emphasizing that the defendant was in fact liable for the subrogor's injuries. *Transport Int'l Pool, Inc. v. Pat Salmon & Sons*, 609 So.2d 658 (Fla.Dist. Ct.App.1992). There, the subrogee mistakenly paid a settlement to the subrogor, but it was later determined that the subrogee was not negligent. Thus, the court allowed the subrogee to seek restitution from the defendant—the actual wrongdoer. *See id.* at 663.

Plaintiff again misses the mark by charging that defendant's position—that there is no claim for subrogation absent a warranty or other contract—"misses the point." Plaintiff correctly but superficially states that subrogation "does not include the legal requirements of privity, reliance, or express warranty...." With respect to the relationship between plaintiff and defendant, these "technical legal rules" are irrelevant. However, for establishing that defendant otherwise has a legal obligation to the homeowners, these requirements are central. *Cf. West American*, 495 So.2d at 207 (jettisoning "technical legal rules" to allow subrogation claim where subrogee could not collect from defendant under conventional indemnity or contribution theory). Absent a contract or warranty between defendant and homeowners, plaintiff has no subrogation claim against defendant.

from defendant when defendant is not otherwise

Finally, plaintiff's reliance on *Kala Invs., Inc. v. Sklar*, 538 So.2d 909 (Fla.Dist.Ct.App. 1989) raises a judicial red herring by suggesting that the question of an inherent defect in Masonite siding can save plaintiff's claim from summary judgment. Read in context, the *Kala* court determined that the issue of a latent versus patent defect went to the question of the defendant's liability. If the defect was found to be latent, then the subrogor was not at fault—and the defendant was negligent—and thus could seek subrogation for having mistakenly settled a personal injury claim. *See id.* at 918–19. In the present case, the defect issue does not enjoy such prominence: As noted above, tort recovery is barred by the economic loss rule. Simply put, plaintiff has no basis for subrogation because the homeowners have no claim against defendant.

### IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS ORDERED that plaintiff's five counts of breach of warranty and one count for subrogation are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's indemnity claim may proceed to the extent defined in this Court's Order and Reasons.

obligated to pay damages to the homeowners.